■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REGGIE MADDOX, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Starkey, J.), rendered July 16, 1980, convicting him of robbery in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain identification testimony.

Ordered that the judgment is affirmed.

Inasmuch as "[a]n accidental or unarranged showup at the police station is not unnecessarily or impermissibly suggestive since such an event is unavoidable and is not attributable to any misconduct on the part of the police or prosecutor" *(People v Hampton,* 129 AD2d 736, 737), the hearing court properly denied that branch of the defendant's omnibus motion which was to suppress the complainant's testimony regarding his spontaneous identification of the defendant. The evidence adduced at the hearing was that the complainant, who was told to come to the precinct to recover his vehicle and was not aware that anyone had been apprehended in connection with the crime perpetrated on him, was innocently asked by the receptionist to be seated in the waiting area and await the officer handling his case. The officer had no knowledge that the complainant was in the station house as he and his partner were about to transport the defendant and his cohort to Central Booking, and, in any event, was not aware that the complainant had in fact witnessed the crime and would be able to make an identification. While the officers were escorting the defendant and another person down the stairs, the complainant inadvertently saw the defendant and identified him as the perpetrator of the crime. Clearly the evidence supported the hearing court's finding that the

showup was accidental *(see, People v Gonzalez,* 61 AD2d 666, *affd* 46 NY2d 1011).

Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

Finally, the defendant's postjudgment motion to set aside the verdict based upon an affidavit executed by an allegedly dissenting juror was properly denied without a hearing. The record reveals that the jury rendered a unanimous verdict. Upon the polling of the jury, one of the jurors responded to the question of whether the verdict was hers initially in the negative but immediately thereafter, as if she had misspoken, with "Yes, it was". The court asked the juror to repeat whether the verdict was hers after the completion of the jury poll. The juror unequivocally responded in the affirmative. In the absence of a declaration in the negative by a juror as to "whether the verdict announced by the fore[person] is in all respects h[er] verdict" (CPL 310.80) or a claim of duress, no more was required *(see, People v Pickett,* 61 NY2d 773; *People v Crandall,* 53 AD2d 956, *affd* 45 NY2d 851; *People v Gottlieb,* 44 AD2d 587, *revd on other grounds* 36 NY2d 629). Indeed, no further relief was, at that juncture, requested.

The postconviction application, supported by an affidavit executed by the juror, in which she sought to impeach her verdict by reference to matters occurring during the deliberation process, specifically, that having been "personally attacked, harassed and intimidated by other members of the jury panel", she "capitulated and agreed to vote guilty" was incompetent as a matter of law *(see, People v Sprague,* 217 NY 373, 381). As the Court of Appeals so aptly observed in *People v De Lucia* (20 NY2d 275, 278): "The policy reason for the present rule is, of course, that we do not wish to encourage the posttrial harassing of jurors for statements which might render their verdicts questionable. With regard to juryroom deliberations, scarcely any verdict might remain unassailable, if such statements were admissible. Common experience indicates that at times articulate jurors may intimidate the inarticulate, the aggressive may unduly influence the docile. Some jurors may 'throw in' when deliberations have reached an impasse. Others may attempt to compromise. Permitting jurors to testify regarding such occurrences would create chaos". Thus, in the absence of allegations regarding "outside influ-

ences on a jury" which may have prejudiced the defendant *(People v De Lucia, supra,* at 279) or the discovery of a juror's lack of qualifications *(People v Leonti,* 262 NY 256), there was no basis for a hearing and the defendant's motion was properly denied.

We have considered the defendant's remaining contentions and find them to be either unpreserved for appellate review or without merit. Mollen, P. J., Thompson, Lawrence and Weinstein, JJ., concur.