**STATE**

**v.**

**Joseph M. DROWNE.**

**No. 90–477–C.A.**

Supreme Court of Rhode Island.

Jan. 24, 1992.

James E. O'Neil, Atty. Gen., Neil F.X. Kelly, Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This matter is before the Supreme Court on the defendant's appeal from his conviction in Superior Court of burglary and simple assault. He was sentenced to twenty years at the Adult Correctional Institutions, fifteen years of which were suspended. We affirm.

The defendant, Joseph M. Drowne, was charged with four criminal offenses arising from a complaint and testimony by Detective Paul Marino (Marino) of the North Providence police. On November 20, 1987, Detective Marino awoke in his Johnston residence to a loud noise after which he observed a man standing in his living room. Once aware that Marino was awake, the man ran towards the front door, but Marino tackled him before he could escape. While subduing the intruder, Marino noticed a second man in the adjacent room. The second man then ran towards Marino, kicked and punched Marino, and escaped out the front door. At the same time the first man broke free and ran out the front door, but Marino recovered and tackled the first man on the sidewalk in front of the residence. The first man then called to the second man for help, asking the second man to return and stab Marino. The second man stopped running, turned around, and advanced towards Marino brandishing a knife. At this point Marino released the first man, and the two intruders fled.

Marino immediately contacted the Johnston police who responded to the scene and took his statement. Marino made at least three subsequent visits to the Johnston police department to look at photo displays to identify suspects and to supplement his statement; and during a visit on December 8, 1987, Marino identified Drowne as the second man in his house and as the man who approached him carrying a knife. Drowne was subsequently indicted on one count each of: (1) burglary; (2) simple assault; (3) assault with a deadly weapon; and (4) larceny over $500.

At Drowne's jury trial the state relied primarily on testimony of Detective Marino and the Johnston police detective who handled the case. Drowne then took the stand and produced witnesses to support his alibi defense. After both the state and defendant rested Drowne made motions for judgment of acquittal on all four counts. The trial justice denied the motions for judgment of acquittal on the burglary and simple-assault charges and reserved decision on the assault-with-a-dangerous-weapon and larceny-over-$500 charges.

On October 10, 1990, the jury returned a guilty verdict on all four charges, and pursuant to Rule 31(d) of the Superior Court Rules of Criminal Procedure, defense counsel moved to poll the jury. The first juror polled, Irene E. Allie, asserted defendant's guilt on the first three counts but answered equivocally as to count 4, larceny over $500.

"COURT CLERK: As to the charge of larceny over five hundred dollars, do you find the defendant guilty or not guilty?

"MS. ALLIE: Uncertain.

"[DEFENSE COUNSEL]: Motion, your Honor.

"THE COURT: You can't be uncertain about anything. I told you last Friday when you went up that you had to be unanimous all twelve of you as to whether or not defendant was guilty or not guilty. If you are uncertain, then it is certainly * * * not unanimous."

An unrecorded bench conference followed, and the remaining jurors were polled without further incident.

Once the polling was completed, defense counsel moved for a mistrial because the verdict was not unanimous. The state responded that the verdict was uncertain only with respect to the larceny charge and requested that the court inquire of Juror Allie about her "uncertain" response. The trial justice granted the state's request and conducted a hearing to interview Juror Allie.

At the hearing Allie reaffirmed her guilty finding on the first three counts and

explained why she was uncertain with respect to count 4. Specifically Allie expressed doubts about whether the items taken from Detective Marino's home exceeded $500. After the trial justice completed his questioning concerning the larceny charge he allowed defense counsel to examine Allie further about the remaining three charges. When defense counsel asked whether Allie was satisfied that Drowne was guilty of the burglary charge, Allie hesitated and responded:

> "I am trying to go on [the] facts and evidence and [I] am doing [the] best I can with what I have. Now if the lighting was poor outside because of the streetlight * * *, [I] should have had some kind of evidence to prove that [the] lighting was bad; that the lighting from the street didn't go into the sun parlor; that he [Drowne] didn't confront [Marino] face to face."

Allie continued to explain that she considered factors other than Marino's identification in reaching a guilty verdict, and that she based her decision on the evidence received in trial and the jury instructions given by the trial justice.

At the conclusion of the hearing the trial justice returned the remaining jury members to the courtroom and discharged them from service, after which defendant renewed his motion for mistrial. The trial justice denied the renewed motion, but he did grant defendant's motions for judgment of acquittal on the two counts on which he had reserved decision. In granting the motions for judgment of acquittal the trial justice found that with respect to the larceny-over-$500 charge that the state had failed to prove that the value of the stolen goods exceeded $500, and that with respect to the assault-with-a-deadly-weapon charge, that the state had failed to prove that defendant was close enough to the victim to effectuate the crime. The defendant appeals from his conviction of burglary and simple assault.

On appeal defendant claims that the trial justice erred by denying defendant's motion for mistrial. The defendant claims that the interrogation of Juror Allie after her "uncertain" response during the polling of the jury revealed that she inappropriately considered defendant's failure to present evidence in reaching guilty verdicts on all four counts, and that this consideration of defendant's failure to present evidence amounted to serious misconduct warranting the declaration of a mistrial.

■ In order to reach the discussion of whether Juror Allie inappropriately considered defendant's failure to present evidence, defendant must first overcome the general rule against permitting a juror to impeach a verdict. Rule 606(b) of the Rhode Island Rules of Evidence sets forth the general rule regarding inquiry into the validity of a verdict, as follows:

> *"Inquiry Into the Validity of Verdict or Indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement [occurring] during the course of the jury's deliberations or to the effect of anything upon his or her or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes."

The accompanying Advisory Committee Note to Rule 606 states that Rhode Island practice concerning admissibility of juror testimony is consistent with the federal rule except with respect to an unauthorized juror view.[1]

---

1. In deciding the instant appeal, we do not decide whether to include evidence of an unauthorized juror view as falling within the exception to the general rule of exclusion of juror testimony regarding juror misconduct. *See generally* Advisory Committee's Note to Rule 606.

Although this is the first time we have reviewed the admissibility of juror testimony to impeach a verdict since the adoption of Rule 606(b), we find that our analysis in *Palmigiano v. State*, 120 R.I. 402, 387 A.2d 1382 (1978), governs the instant appeal. In *Palmigiano* we relied on the federal approach to juror impeachment in stating that:

> "The law is well settled in this state that the use of affidavits of jurors themselves, or of others, concerning what the jurors may have done either before or during their deliberations is impermissible to impeach the jury verdict. *State v. Palmigiano*, 115 R.I. 166, 168, 341 A.2d 742, 743 (1975). One exception to this rule, however, occurs when such affidavits are admitted for the *sole* purpose of demonstrating that matters not in evidence reached the jury through outside communications or media contacts." 120 R.I. at 407, 387 A.2d at 1385.

Accordingly we must look to see if Juror Allie's testimony falls within the recognized exception to the rule.

A review of the testimony reveals an explanation of Juror Allie's deliberative process and the factors she considered in reaching a guilty verdict. This explanation is the exact testimony that Rule 606(b) prohibits, and the record reflects no evidence that any juror received an unauthorized prejudicial communication or that any outside influence was improperly exerted on a juror. Accordingly the testimony may not be used to impeach the verdict for it does not fall within the exception to Rule 606(b). In denying the defendant's appeal, we reaffirm the rule's underlying public policies of providing for the termination of litigation and for ensuring that jury verdicts "possess a conclusiveness that will preserve the stability of the jury trial as an instrument for doing substantial justice." *Palumbo v. Garrott*, 95 R.I. 496, 502, 188 A.2d 371, 374 (1963).

Although we do not look to Juror Allie's testimony other than to determine if it falls within the exception to Rule 606(b), we realize the dilemma a trial justice faces when confronted by a juror's equivocal response during the poll of the jury. In a criminal case the poll of the jury gives each juror an opportunity to assent in open court to the verdict returned by the foreman before the verdict is recorded. This public pronouncement under scrutiny enables the court to determine that each juror agrees with the verdict and that no juror was coerced or was induced to reach a verdict to which he has not assented. A problem arises, however, when an individual juror gives an inconsistent, equivocal, or conditional assent to the verdict. In these situations, the court must determine whether the juror's response is so removed from the verdict as to make the verdict defective or whether the defect can be cured by further interrogation or by further deliberations.

A trial justice has wide discretion in determining whether to send the jury back for further deliberations or to interview the equivocal juror. If, however, the trial justice conducts an interview, the procedure must be tailored to conform with Rule 606(b). In fashioning the appropriate procedure for questioning a juror in these circumstances, we adopt the guidelines promulgated by the New York Court of Appeals in *People v. Pickett*, 61 N.Y.2d 773, 774–75, 461 N.E.2d 294, 295, 473 N.Y.S.2d 157, 158 (1984). The facts surrounding *Pickett* are analagous to those in the instant appeal in that one juror responded during the poll of the jury, "Yes, under duress, I'm saying yes." *Id.* at 774, 461 N.E.2d at 295, 473 N.Y.S.2d at 158. In reversing the trial court because of the trial justice's failure to conduct a hearing to determine the nature of the duress despite defense counsel's request that it be done, that court outlined the appropriate procedure the trial justice should have taken. It explained that in making such an inquiry the trial justice should address:

> "the juror out of the presence of the other jurors, instructing her that communications among the jurors that were a part of their deliberative process in attempting to reach a verdict on the issues they were charged to decide (including their efforts by permissible arguments

on the merits to persuade each other) were secret and not to be disclosed to him." *Id.*

If the juror cannot then explain her response without disclosing information concerning the deliberative process, the trial justice can take no further action other than to accept the juror's verdict. If, however, the juror explains the reasons behind the response in question, the trial justice must remain alert to interrupt and preclude disclosure of testimony concerning the jury's deliberative process. *Id.* at 774–75, 461 N.E.2d at 295, 473 N.Y.S.2d at 158. In adopting these guidelines for the hearing, we further require that only the trial justice in the presence of opposing counsel examine the juror, and that in no circumstances should counsel be allowed to question the juror.

In the instant case the trial justice acted within his discretion in conducting a hearing in the presence of opposing counsel to determine the nature of Juror Allie's "uncertain" response. In conducting this hearing, however, the trial justice should not have allowed counsel to examine the juror. Nevertheless, because we find that the testimony elicited from Juror Allie by defense counsel must be excluded under Rule 606(b), we do not consider the testimony in reaching a decision in the instant appeal. For the reasons stated, the defendant's appeal is denied and dismissed and the decision of the Superior Court is affirmed.