OPINION OF THE COURT
 

 Simons, J.
 

 The dispositive issue in this appeal is whether the trial court erred in refusing to conduct a limited inquiry to determine whether six jurors participated in the deliberations on
 
 *57
 
 all the issues submitted to the jury. Because one juror’s responses during the poll of the jury suggested she may not have participated in all of the jury’s deliberations, we conclude that the order of the Appellate Division must be reversed, the judgment vacated, and a new trial ordered.
 

 Plaintiff Lyndon Sharrow, an iron worker employed by third-party defendant G & H Steel, was injured while using a Genie hoist to move a metal lockbox during construction of the Southport Correctional Facility. He brought this action against defendant Dick Corporation, the general contractor, and defendant Southern Steel Corporation, the subcontractor for the project, alleging common-law negligence and violations of sections 200, 240 (1) and 241 (6) of the Labor Law. Defendants in turn brought a third-party action for contribution and indemnification against G & H Steel, plaintiff’s employer. Prior to trial, Dick and Southern successfully moved for summary judgment against G & H Steel for common-law and contractual indemnification. At trial, plaintiff withdrew all his claims except that for violation of Labor Law § 241 (6) and the action proceeded on that claim alone.
 

 At the conclusion of the jury’s deliberations, the foreperson announced that five members of the jury had agreed to a verdict finding defendants’ violation of the statute the proximate cause of plaintiff’s injuries and awarding him damages in the amount of $430,000. Counsel for G & H Steel requested that the jury be polled. Departing from the usual procedure, the court clerk conducted the poll by reading each question on the verdict sheet and then asking each juror in turn his or her verdict on the question.
 
 [1]
 
 When the first question was asked— whether there was a violation of the Labor Law for which defendants were liable — juror No. 5 stated that her answer was "No.” The clerk then read the second question — whether the Labor Law violation was a proximate cause of plaintiff’s injuries — and again asked each juror "[w]hat is your verdict?” The transcript reflects juror No. 5’s reply:
 
 *58
 
 When the poll on the third question — concerning the total amount of damages necessary to compensate plaintiff— reached juror No. 5, she apparently did not immediately answer. The transcript contains this exchange:
 

 
 *57
 
 "juror number five: I had no—
 

 "the clerk: Your verdict is no?
 

 "the court: Well, she didn’t make a determination because she didn’t move on
 
 [sic]. ”
 

 
 *58
 
 "the clerk: Number 5? No response?
 

 "juror number five: No.”
 

 To the remaining three questions, involving specific items of damages and of plaintiffs possible negligence, juror No. 5 replied "No response.”
 

 At the conclusion of the polling and before the jury was discharged, counsel for G & H Steel asked to approach the Bench and the court temporarily excused the jury. Counsel identified what he believed to be an inconsistency in the damage amounts stated by the foreperson. He also raised the separate question whether juror No. 5’s answers indicated that she had not voted on any of the questions after the first and may not have participated in the deliberations on any issue other than that of liability. Contending that G & H may have been deprived of a trial by a full jury of six members, counsel requested that the trial court conduct a "very limited questioning of this juror” to determine the extent of her participation in the deliberations. After discussion with all counsel, the trial court denied the request, and judgment was subsequently entered for plaintiff.
 

 The Appellate Division, with two Justices dissenting, modified, by ordering a new trial on the question of damages for pain and suffering, unless defendants stipulated to an additur increasing the amount of that component of the award from $13,000 to $150,000 (204 AD2d 966). The majority of the court rejected the contention that defendants and third-party defendant G & H Steel had been deprived of the constitutional right to trial by six jurors, contending there was no evidence that juror No. 5 had refused to participate, or been prevented from participating, in the deliberations. In addition, the majority declined to review as unpreserved the argument that plaintiffs allegations of a Labor Law § 241 (6) violation were insufficient to meet the standard laid down in
 
 Ross v Curtis-Palmer Hydro-Elec. Co.
 
 (81 NY2d 494), decided by this Court after plaintiffs trial but before the appeal came on to be heard. Third-party defendant G & H Steel and defendant Southern appealed on the basis of the two-Justice dissent at the Appellate Division. Because defendants Dick and Southern had stipulated to the additur, we granted plaintiffs motion to
 
 *59
 
 dismiss Southern’s appeal on the basis of nonaggrievement (84 NY2d 976). Defendant Dick took no appeal. Thus, G & H Steel is the sole appellant before the Court.
 

 We agree with the Appellate Division dissenters that the trial court erred in refusing to conduct a limited inquiry to determine whether juror No. 5 participated in the verdict process, an error that implicates the constitutional right to a trial by a six-member jury and mandates a new trial.
 

 The common law required a jury of 12 members, and a unanimous verdict
 
 (see, Patton v United States,
 
 281 US 276;
 
 Cancemi v People,
 
 18 NY 128). In 1935, however, article I, § 2 of the New York Constitution was amended to authorize a legislative enactment permitting five-sixths jury verdicts in civil cases. The right to a jury trial was constitutionalized in its present form in 1938, and by then the Legislature had already enacted former Civil Practice Act 463-a (now CPLR 4113 [a]), authorizing the five-sixths verdict
 
 (see generally,
 
 4 Weinstein-Korn-Miller, NY Civ Prac 4113.01
 
 et seq.).
 
 When the Legislature subsequently provided, in 1972, that a civil jury "shall be composed of six persons”
 
 (see,
 
 CPLR 4104), the question arose whether a unanimous verdict rendered by five jurors was as valid as a verdict rendered by five sixths of a six-member jury. The intermediate appellate courts addressing the question were uniformly of the view that, absent the express consent of the parties, CPLR 4104 did not diminish a party’s right to a jury of six sworn to try the issues, and that all six jurors must participate in the deliberations leading to the verdict
 
 (see, Schabe v Hampton Bays Union Free School Dist.,
 
 103 AD2d 418;
 
 see also, Waldman v Cohen,
 
 125 AD2d 116;
 
 Measeck v Noble,
 
 9 AD2d 19).
 

 In
 
 Arizmendi v City of New York
 
 (56 NY2d 753) we suggested our agreement with the view that the constitutional right to a jury trial contemplates that all six jurors participate in the deliberative process.
 
 [2]
 
 Because we determined that the defendants had waived their objection to a juror’s nonparticipation by failing to raise it before the trial court, we did not directly address the issue then, but today we confirm that view and hold that where the parties to a civil case have not
 
 *60
 
 agreed to a trial by fewer than six jurors, a valid verdict requires that all six jurors participate in the underlying deliberations. The parties are entitled to a process in which each juror deliberates on all issues and attempts to influence with his or her individual judgment and persuasion the reasoning of the other five
 
 (see, Schabe v Hampton Bays Union Free School Dist.,
 
 103 AD2d 418, 427-428,
 
 supra).
 
 A juror, having disagreed with the remaining five on liability, must still participate in the deliberations. Otherwise, the jury becomes in essence one of five members only, less than the required number, and no valid verdict results from the deliberative process.
 

 Plaintiff urges that there is "no evidence” here that juror No. 5 did not participate in all the deliberations in this case. That, however, is precisely the reason that the trial court should have conducted the limited inquiry requested, to resolve the doubts engendered by her answers during the poll. The court had the power to inquire into an "imperfect or incomplete” verdict before discharge of the jury
 
 (see, Porret v City of New York,
 
 252 NY 208, 211) or if there was substantial confusion or ambiguity in the verdict
 
 (see, Pogo Holding Corp. v New York Prop. Ins. Underwriting Assn.,
 
 97 AD2d 503, 505,
 
 affd
 
 62 NY2d 969) and it should have done so. A contemporaneous inquiry would have provided it with the opportunity to remediate the problem, or, if necessary, to order a new trial if no other permissible remedy was available
 
 (see, Barry v Man-glass,
 
 55 NY2d 803, 806).
 

 An inquiry to clarify a verdict before discharging a jury must be distinguished from an attempt to impeach a jury’s verdict after discharge. In considering the propriety of any posttrial inquiry into the validity of a verdict or indictment, the majority of jurisdictions have adopted, either by statute or in case law, the rule embodied in rule 606 (b) of the Federal Rules of Evidence. It directs that a juror may not testify "as to any matter or statement occurring during the course of the jury’s deliberations” except in cases when an inquiry into external influences on the jury is necessary. The policy considerations underlying this rule were first expressed by the United States Supreme Court in
 
 McDonald v Pless
 
 (238 US 264) when it addressed the admissibility of juror evidence impeaching, posttrial, a quotient verdict. In rejecting the use of the evidence, the Court identified three important policies to be furthered: ensuring the finality of verdicts, preventing juror harassment by disappointed litigants or their attorneys,
 
 *61
 
 and encouraging "frankness and freedom of discussion and conference” among the jurors
 
 (id.,
 
 at 267-268;
 
 see also, Tanner v United States,
 
 483 US 107, 120;
 
 see generally,
 
 Cammack,
 
 The Jurisprudence of Jury Trials: The No Impeachment Rule and the Conditions for Legitimate Legal Decisionmaking,
 
 64 U Colo L Rev 57 [1993]). Although New York has not adopted a statute similar to rule 606 (b), our case law is consonant with its underlying principles
 
 (see, Kaufman v Lilly & Co.,
 
 65 NY2d 449, 460;
 
 People v De Lucia,
 
 20 NY2d 275, 278;
 
 People v Redd,
 
 164 AD2d 34;
 
 Russo v Jess R. Rifkin, D.D.S., P. C,
 
 113 AD2d 570;
 
 Gamell v Mount Sinai Hosp.,
 
 40 AD2d 1010,
 
 appeal dismissed
 
 32 NY2d 678).
 
 [3]
 
 None of the policies enumerated in
 
 McDonald
 
 is compromised when the trial court itself, prior to discharge of the jury and entry of the verdict, undertakes a limited inquiry into an inconsistency or ambiguity in the jury’s verdict that is apparent from the jurors’ responses during polling.
 

 The polling process here revealed such an ambiguity. Even if "no response” is considered the equivalent of "no award” in reply to the questions on damages, juror No. 5 also offered "no response” to the question whether plaintiff had been negligent. Her answers raised a legitimate question whether juror No. 5 had participated in the jury’s discussion of issues other than liability, and defense counsel appropriately requested a limited inquiry to clarify that juror No. 5 had participated in the deliberative process.
 

 In
 
 People v Pickett
 
 (61 NY2d 773), we concluded that it was error for a trial court to refuse to conduct such an inquiry, to the extent that it could be carried out without infringing upon the secrecy or integrity of the jury’s deliberations. Here, a simple inquiry by the trial court into whether juror No. 5 had deliberated on all the questions before the jury would have been well within permissible bounds
 
 (cf. State v Drowne,
 
 602 A2d 540 [RI] [adopting
 
 Pickett
 
 guidelines for conducting the inquiry, but ruling Trial Justice’s inquiry into juror’s "uncertain” verdict was improper where juror discussed the specific factors she considered in arriving at her verdict and defense counsel was permitted to question juror]).
 

 
 *62
 
 Because a Trial Judge has wide discretion in determining whether to send the jury back for further deliberations, had juror No. 5 revealed that she had indeed failed to take part in the entirety of the jury’s deliberations, the trial court could have directed her to do so in a new round of jury deliberations. However, in the absence of any inquiry, the possibility remains that defendants’ constitutional right to trial by a full six-member jury was compromised. Accordingly, we see no remedy but to order a new trial. Moreover, because third-party defendant G & H Steel’s liability is entirely derivative, a new trial must be ordered with respect to the nonappealing defendants as well in order to afford complete relief to the appealing third-party defendant
 
 (see, Cover v Cohen,
 
 61 NY2d 261).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the judgment vacated and a new trial ordered.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, with costs, and a new trial ordered.
 

 [1]
 

 . Customarily, the reported verdict is read to the jury and then each juror is asked: “Is that your verdict?”, to which the juror responds yes or no
 
 (see,
 
 Supreme and County Court Operations Manual, State of New York, published by Office of Court Administration [Jan. 1991]).
 

 [2]
 

 .
 
 Although
 
 Arizmendi,
 
 like this case, involved a unitary trial, the Committee on Pattern Jury Instructions subsequently applied
 
 Arizmendi
 
 to the more complex bifurcated trial as well, commenting that "[i]f there is a 5-1 vote on liability after the first stage of a bifurcated trial, all jurors, including the liability dissenter, are required to participate in the assessment of damages”
 
 (see,
 
 1 NY PJI2d 32-33 [1995 Supp]).
 

 [3]
 

 . The Appellate Division majority also relied on the proscription against posttrial juror questioning embodied in Civil Rights Law § 14. However, this statute is generally interpreted as a protection against subjecting a juror to civil or criminal liability for his or her conduct during deliberations or in rendering a verdict
 
 (see, Matter of Cochran,
 
 237 NY 336).