[659 NYS2d 453]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVIER MERCADO, Appellant.

First Department, June 26, 1997

### APPEARANCES OF COUNSEL

*Stephen R. Mahler* of counsel, Kew Gardens *(Mahler, Miller, Harris & Engel, P. C.,* attorneys), for appellant.

*Daniel R. Wanderman* of counsel, Bronx *(Jennifer A. Daskevich* and *Robert Moore* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

### OPINION OF THE COURT

TOM, J.

Defendant appeals from a judgment convicting him of murder and a related charge on the grounds of, *inter alia,* failure of the trial court to take remedial action to insure that the jury verdict was unanimous.

Testimony adduced at the trial reveals that on July 16, 1994, shortly after 8:30 P.M., Brenton Rousey, Daniel Serrano and Mike Fernandez were accosted by defendant and a group of young men on Valentine Avenue in the Bronx. An altercation broke out and Fernandez was struck on the head with a 40-ounce beer bottle. As the two friends attempted to drag the unconscious Fernandez to safety, Serrano was pummeled to the ground, and beaten by three youths. As he lay on the ground, he was shot several times by defendant and another gunman. Serrano later died from his wounds. Fernandez was also shot in the back, but he survived his injuries.

Defendant was convicted, after a jury trial, of murder in the second degree and assault in the second degree. He was sentenced to concurrent terms of 25 years to life and 2 to 6 years, respectively.

On October 20, 1995, the jury informed the court, by a written note, that they had reached a verdict. After convening the parties, the foreperson, in open court, once again answered in the affirmative that the jury had agreed upon a verdict. After the foreperson answered on behalf of the jury on all the counts, indicating a guilty verdict for counts two and six (murder in the second degree and assault in the second degree) and not guilty on all other counts, defendant's counsel requested that the jury be polled.

When juror number 6 was asked whether the stated verdict was hers, she did not respond. In fact, juror number 6 repeatedly failed to answer the court after the same question was reiterated a number of times. The juror, however, did indicate to the court her understanding of the question and her ability to hear the court. The court then stated: "[I]t's obvious that you're very emotional about this and that you are taking your job as juror seriously. We understand that. But you have indicated your verdict in the jury room and it is necessary for us to confirm it here if, in fact, that was your verdict. And therefore you are being asked whether that, in fact, is your verdict, yes or no? Please make a response to my question."

At this point the juror responded "Yes". On appeal, defendant argues that the failure of the court to conduct an inquiry to determine whether the juror's verdict was a product of coercion or duress created an uncertainty as to the unanimity of the jury verdict that mandates reversal.

■■ When juror number 6 repeatedly did not respond to the court's query whether the verdict announced by the foreperson was her verdict, defense counsel only requested a sidebar; the application was denied so that the court could repeat its question to the juror. Counsel did not request further relief, rendering unpreserved the appellate claim that the court erred in accepting the verdict without conducting a hearing as to juror number 6 (*People v Cain*, 76 NY2d 119, 124, n 2; *People v Dicks*, 188 AD2d 352, *lv denied* 81 NY2d 838; *see*, *People v Williams*, 70 NY2d 946). In any event, we find no basis on this record to conclude that defendant was deprived of his right to a unanimous jury verdict.

CPL 310.80 provides in relevant part that after a verdict has been rendered, upon polling the jury, if "any juror answers in

the *negative*, the court must refuse to accept the verdict and must direct the jury to resume its deliberation" (emphasis added). Giving the specific language of the statute its literal meaning, the requirement of further deliberation turns on whether a negative answer is imparted by the juror to the court. As articulated succinctly in *People v Maddox* (139 AD2d 597, 598, *lv denied* 72 NY2d 862), in the "absence of a declaration in the negative * * * or a claim of duress, no more was required" during polling to uphold the validity of the verdict.

In the present case, juror number 6 did not at any time make a negative declaration in response to the court's question as to whether the stated verdict was hers. Although she initially failed to respond to the court's inquiry, she later answered "Yes" unequivocally. Upon further inquiry, the court reporter informed the court that she said "Yes". When the court once again asked: "Is your response, yes?" Juror number 6 confirmed that the verdict was hers.

The trial court, an experienced and discerning jurist, noted for the record that the juror clearly took her responsibility as a juror seriously, and was visibly upset in discharging the responsibility. The juror's momentary inability to articulate her individual verdict may have been caused by fear, or stage fright, or by being overwhelmed by the violent nature of the crime involved or the gravity of her decision. However, an inquiry would have served no statutory purpose under these circumstances, where the record clearly reflects that the juror provided an unqualified affirmative response to the court, which is the dispositive consideration. Based on the juror's affirmative response during polling, together with the announcement by the foreperson that a unanimous verdict had been reached, we find no basis to conclude that the verdict was less than unanimous.

The validity of the verdict is established as well by a comparison with cases where a juror's response during polling was expressly equivocal. In the present case, the juror did not request to talk to the trial court in connection with the verdict, resulting in a robing room inquiry (*cf., People v Cain*, 151 AD2d 591, *revd on other grounds* 76 NY2d 119, *supra*). Nor was this juror's initial failure to respond tantamount to the juror's deliberate, and negative, statement " 'No response' " (*Sharrow v Dick Corp.*, 86 NY2d 54, 58). Nor did the juror answer affirmatively, but explicitly qualify the response during polling by indicating that the answer was " 'with reasonable doubt' " (*People v Garvin*, 90 AD2d 682, 683), which, on its face, was a response contrary to the requisite standard of guilt.

The dissent relies on *People v Pickett* (61 NY2d 773, 774) as authority requiring a reversal, but the further remedial action required in that ruling resulted when the juror, in response to the court's question whether the verdicts were hers, specifically answered, " 'Yes, under duress' ". In this case, the dissent's contention that the juror exhibited duress based on her hesitancy to respond is purely speculative. There is no precedent to support an analogy between an explicit statement of duress and a juror's delay in responding, especially when the juror herein subsequently affirmatively answered "Yes". The dissent also relies by analogy on the ruling in *Deane v Dunbar* (777 F2d 871), issued in the context of a civil proceeding, in which the jurors were polled as to their response to special interrogatories. However, the salient circumstance in that case resulting in further inquiry was a juror's statement during polling that he had given his answer at the conclusion of deliberations " 'with misgivings' ", that he had " 'different ideas' ", that he did not now concur in the verdict and that " 'We are not unanimous, though, I gave in' ", a circumstance manifestly not present herein *(supra,* at 874). Any of these or similar circumstances, by contrast with the delayed but unqualified affirmative response of juror number 6, would constitute negative answers under CPL 310.80, precluding the court from accepting the verdict and requiring that the jury resume deliberations.

Finally in this regard, the dissent contends that, as a consequence of the verdict, the juror was sick and had to be led from the courtroom. Her putative illness is not clearly established in the record, and the inference drawn by the dissent is conjectural. Trial counsel's attempt to place on the record that the juror was sick was rejected by the trial court as unfounded, in which correction counsel acquiesced. Rather, the trial court observed that it was difficult for the juror to arrive at a verdict and that she became very emotional when she had to publicly announce her verdict. The record also indicates that the juror's affirmative response was her own, and not the court reporter's.

■ Turning to defendant's remaining arguments, we note that defendant's claim that the prosecutor improperly questioned defendant's witness about her failure to go to the police with her exculpatory observation was not preserved since counsel did not make an objection or seek curative instructions *(People v Dawson,* 50 NY2d 311, 316) and we decline to review it in the interest of justice. Were we to review, we would find it to be without merit. Also unpreserved, and unreviewable in

light of an inadequate record, is defendant's claim that the court did not provide him with meaningful notice of a jury note and a meaningful opportunity to be heard with respect to the court's supplemental instruction (*People v Starling,* 85 NY2d 509).

Accordingly, the judgment of the Supreme Court, Bronx County (David Stadtmauer, J.), rendered November 13, 1995, convicting defendant, after a jury trial, of murder in the second degree and assault in the second degree and sentencing him to concurrent terms of 25 years to life and 2 to 6 years, respectively, should be affirmed.

ROSENBERGER, J. (dissenting). A State criminal defendant has a right to a unanimous trial verdict (NY Const, art I, §§ 2, 6), and CPL 310.80 provides that upon application, the jury must "be polled and each juror separately asked whether the verdict announced by the foreman is in all respects his verdict". This section further provides that, where "no disagreement is expressed", the jury is to be discharged (*ibid.*)

The object of the jury poll is " 'to test the uncoerced unanimity of the verdict by requiring "each juror to answer for himself, thus creating individual responsibility, eliminating any uncertainty as to the verdict announced by the foreman" ' " (*United States v Gambino,* 951 F2d 498, 502, *cert denied sub nom. D'Amico v United States,* 504 US 918 [citations omitted]). Further, " 'upon the appearance of *any* uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for "there is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." (citations omitted)' " (*United States v Rastelli,* 870 F2d 822, 835, *cert denied sub nom. Agar v United States,* 493 US 982 [2d Cir 1989], adopting the test set forth in *United States v Morris,* 612 F2d 483, 489 [10th Cir 1979]).

Upon the polling of the jury, it took over seven minutes and approximately 16 requests of juror number six, and considerable prodding by the Judge, before this juror provided a response to the court's inquiry as to whether the verdict announced by the foreperson was, in fact, her verdict. After six requests for an answer, with no response forthcoming, the following took place:

"THE COURT: What's the juror's name?

"COURT CLERK: Betty Hallums.

"THE COURT: Miss Hallums, do you hear me?

"JUROR NUMBER SIX: Yes.

"THE COURT: Yes? Do you hear me?

"JUROR NUMBER SIX: Yeah.

"THE COURT: Do you understand my question?

"JUROR NUMBER SIX: Yes.

"THE COURT: Do you understand that you're being asked whether you agree with the verdict that's been announced? Do you understand that?

"You do understand that?

"Do you agree with that verdict? Is that your verdict as it was announced?

"Please tell us yes or no?

"(No response.)

"[DEFENSE COUNSEL]: Judge, I request a sidebar.

"THE COURT: No. I want a response. Either yes or no?

"(No response.)

"THE COURT: What is it that you want to say? Are you able to speak?

"JUROR NUMBER SIX: Yes.

"THE COURT: Tell us either yes or no? Do you agree with that verdict or do you not agree with that verdict?

"(No response.)

"THE COURT: Miss Hallums, it is necessary for you to respond to that question. You must tell us either yes or no?

"(No response.)

"THE COURT: Please respond?

"(No response.)

"THE COURT: Please respond, Miss Hallums?

"(No response.)

"THE COURT: Miss Hallums, we cannot continue until we get a response from you?

"(No response.)

"THE COURT: Respond either yes or no?

"(No response.)

"THE COURT: What is your response please?

"(No response.)

"THE COURT: Is that your verdict, yes or no?

"(No response.)

"THE COURT: Now, Miss Hallums, it's obvious that you're very emotional about this and that you are taking your job as

a juror seriously. We understand that. But you have indicated your verdict in the jury room and it is necessary for us to confirm it here if, in fact, that was your verdict. And therefore you are being asked whether that, in fact, is your verdict, yes or no? Please make a response to my question?

"JUROR NUMBER SIX: Yes.

"THE COURT: What was the response?

"COURT REPORTER: Yes.

"[DEFENSE COUNSEL]: Judge, I didn't hear it and earlier I saw her indicating her head no.

"THE COURT: Is your response, yes? The juror—the Reporter says that the juror responded yes.

"[DEFENSE COUNSEL]: Judge, just prior to that I saw her shaking her head no so I'd like to hear it.

"THE COURT: Continue polling the jury."

This verdict did not meet the applicable standard for obtaining a criminal conviction (*see, People v Garvin*, 90 AD2d 682).

Given the equivocal nature of the elicited response, the court's repeated demands for an open court "yes" or "no" answer, over defense counsel's requests for a sidebar, were unduly coercive, presenting an unacceptable risk that the juror did not render an independent verdict but instead merely acquiesced to the verdict announced by the foreperson (*People v Pickett*, 61 NY2d 773, 775; *see also, Sharrow v Dick Corp.*, 86 NY2d 54, 58 [" 'No response' " by juror to questions on verdict sheet raised legitimate question as to juror's participation in deliberative process]; *cf., People v Cain*, 151 AD2d 591, *revd on other grounds* 76 NY2d 119 [questioning proper where not compelling a "yes" or "no" answer]; *United States v Lawrence*, 618 F2d 986 [open court inquiry proper where juror was unable to declare "guilty" or "not guilty" because of religious convictions, and inquiry revealed no doubt of juror's conclusion that the government proved its case beyond a reasonable doubt]).

Contrary to the majority's analysis, *Pickett* is not distinguishable on the basis of the *Pickett* juror's affirmative statement that the verdict was rendered under duress. The instant juror exhibited duress through her hesitancy, her inaudible response and her immediate physical illness (*see, Sharrow v Dick Corp., supra*, at 61-62). Since her unqualified agreement was called into question by the poll, it was incumbent upon the trial court to take further action to confirm the propriety of the verdict as rendered.

The majority relies upon a portion of CPL 310.80, which provides that only upon a negative declaration by any juror

must the entire panel be sent back to resume its deliberations. Since the instant juror did not make a negative declaration, the majority determines that no further action was warranted. This is an oversimplified application of the statutory section. Plainly, where a negative declaration is made, further deliberation is required, and where complete unanimity is expressed, the jury may be discharged. These facts present a situation between the two extremes, where *Pickett (supra)* instructs that further inquiry is required to ensure that the verdict is unanimous.

As the Second Circuit observed in *Deane v Dunbar* (777 F2d 871, 875 [1985]), "A juror's expression of hesitancy in announcing his verdict may indicate one of at least three possibilities. The juror may mean * * * that he or she had held a view differing from that of the majority of jurors but had abandoned that view to reach unanimity. It may also mean that the juror has not really decided to cast a vote in agreement with the majority sentiment. It may even mean that some untoward influence or coercion has been applied, beyond tolerable arguments of fellow jurors. *Compare, Mattox v. United States*, 146 U.S. 140 * * * (1892) (improper influence of jury bailiff and newspaper article), *and United States v. Pleva*, 66 F.2d 529 (2d Cir. 1933) (coercion resulting from illness), *with United States v. Grieco*, 261 F.2d 414 (2d Cir. 1958) (per curiam) (tolerable persuasion), *cert. denied*, 359 U.S. 907." Given the instant juror's extreme reluctance to respond, it was incumbent upon the Judge to have acknowledged the potential uncertainty of the verdict, and taken an appropriate remedial action, either: (1) conducting further separate inquiry of this juror as to the source of her hesitance within the bounds of the secrecy of the deliberative process, (2) instructing the jury to resume its deliberations for purposes of avoiding a premature verdict (CPL 310.80; *see, Deane v Dunbar, supra*), (3) replacing the juror with the defendant's consent (CPL 270.35), or (4) discharging the jury upon declaration of a mistrial (CPL 310.60, 280.10; *People v Pickett, supra*, at 775).

Since the court did not present this juror, who was obviously emotionally upset and had to be led out of the courtroom, with an opportunity to explain or expound upon the predicament in which she found herself, I would reverse the judgment, as in *Pickett*, and order a new trial.

SULLIVAN, J. P., and ELLERIN, J., concur with TOM, J.; ROSEN-BERGER and MILONAS, JJ., dissent in a separate opinion by ROSENBERGER, J.

Judgment, Supreme Court, Bronx County, rendered November 13, 1995, affirmed.