■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EVERTON D. SIMMS, Appellant. [863 NYS2d 250]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Carroll, J.), rendered July 6, 2006, convicting him of robbery in the first degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant was convicted, upon a jury verdict, of two counts of robbery in the first degree. He contends on appeal that the Supreme Court erred in accepting the verdict because statements made by a juror when the jury was polled and in response to subsequent inquiry by the court demonstrated that the juror had not truly assented to the verdict and that her vote to convict was the result of pressure in the jury room. We conclude that the defendant is correct.

After rendering a verdict of guilty on each count of the indictment, the jury was polled at defense counsel's request. When asked if the verdict was hers, juror number 10 responded, "[w]ell, it is my verdict, although I feel like I was pressured to make that decision." When asked by the court, outside the presence of the other jurors, what she meant "by the word pressure in this context," juror number 10 responded: "Well, I meant pressured by the fact that everyone is standing up, yelling at me, why can't you see it that way, why can't you see it that way? Everyone is yelling like that. After eight hours of that you have to give in." The Supreme Court recalled the other jurors, declared that it was accepting the verdict, discharged the jury, and denied the defendant's motion for a mistrial.

A jury verdict cannot ordinarily be impeached after the conviction on the basis of the tenor of the deliberations (*see People v Brown,* 48 NY2d 388, 393 [1979]; *People v Anderson,* 249 AD2d 405, 406 [1998] [Ritter, J., dissenting]; *People v Thomas,* 170 AD2d 549, 549-550 [1991]; *People v Lehrman,* 155 AD2d 693, 694 [1989]). However, when a juror's response during polling

"engender[s] doubts about a full verdict," the trial court has a responsibility "to resolve any uncertainties" (*People v Mercado,* 91 NY2d 960, 963 [1998]; *see People v Pickett,* 61 NY2d 773, 774 [1984]). Here, the court commenced an appropriate inquiry to clarify juror number 10's initial ambiguous response. The juror's response to that inquiry was not merely a sideways shake of her head before answering that the verdict was hers (*see People v Chin,* 255 AD2d 393 [1998]), nor did she immediately recognize that the verdict was hers after an initial misstatement (*see People v Maddox,* 139 AD2d 597, 598 [1988]). Rather, juror number 10 answered the court's inquiry by stating that "after eight hours of [yelling] you have to give in." Since this response effectively undercut the juror's initial assertion that the verdict was hers, the Supreme Court should not have accepted the verdict (*see People v Francois,* 297 AD2d 750, 750-751 [2002]).

Contrary to the conclusion reached by our dissenting colleague, we do not see the verdict at issue here as the acceptable product of the normal interaction of jurors during deliberations. *People v De Lucia* (20 NY2d 275 [1967]), while recognizing that conduct within the jury room may at times depart from dispassionate rational analysis (*id.* at 278), nevertheless concerned only the admissibility of testimony as to alleged juror misconduct involving an unauthorized visit to the scene of the crime. It did not address the responsibility of the trial court when asked to accept a verdict that is not apparently unanimous and it did not abrogate the requirement of juror unanimity.

Unlike the situations presented in *People v South* (47 AD3d 734, 736 [2008]), *People v Lipman* (254 AD2d 435, 435-436 [1998]), and *People v Maddox* (139 AD2d 597 [1988]), the issue here was raised prior to the court's acceptance of the verdict, when the issue was not whether to reject a verdict that had been accepted, but rather whether to accept the verdict in the first place. The reluctance to allow the impeachment of a verdict by post-conviction statement, which is predicated on the public policy "to discourage posttrial harassment of jurors and to ensure the finality of verdicts" (*People v Smalls,* 112 AD2d 173, 175 [1985]; *see People v Foti,* 99 AD2d 517 [1984]), has no application where the issue is whether the verdict was properly accepted (*see Dalrymple v Williams,* 63 NY 361, 363-364 [1875]).

Had the Supreme Court conducted further inquiry, juror number 10's agreement with the verdict might have been sufficiently established. On this record, however, we cannot say that it was. Since a verdict must reflect the unanimous conclusion of the jury (*see* CPL 310.80), and on the basis of the record before us this verdict did not, the Supreme Court should have

declined to accept the verdict here (*see* CPL 310.80; *People v Francois,* 297 AD2d at 750-751; *People v Horn,* 196 AD2d 886 [1993]) and a new trial is required. Spolzino, J.P., Ritter and Carni, JJ., concur.

Santucci, J. (dissenting and voting to affirm the judgment, with the following memorandum): As the majority correctly states, after the verdict was announced, the jury was polled; when one of the jurors was asked if the verdict of guilt was hers, she responded, "[w]ell, it is my verdict, although I feel like I was pressured to make that decision." Thereafter, upon inquiry by the court, the juror explained that she was "pressured by the fact that everyone is standing up, yelling at me, why can't you see it that way, why can't you see it that way? Everyone is yelling like that. After eight hours of that you have to give in." The majority concludes that the court's inquiry did not resolve the uncertainty as to whether the verdict of guilt was unanimous and thus it should have been rejected. I disagree.

There is no allegation that the juror in question was improperly influenced by any forces outside of the jury room or due to her personal obligations or commitments. Moreover, the juror never stated that she did not vote "guilty" or that she did not believe the defendant was guilty beyond a reasonable doubt (*cf. People v Francois,* 297 AD2d 750 [2002]). Indeed, the juror specifically stated that "[guilty] is my verdict," and thus the verdict was unanimous (*see People v Maddox,* 139 AD2d 597, 598 [1988]).

Neither the fact that the juror felt "pressure" within the jury room, nor the fact that the Supreme Court did not conduct a more extensive inquiry of the juror, constitutes reversible error in this case (*see People v Chin,* 255 AD2d 393 [1998]; *People v Maddox,* 139 AD2d at 598). It is axiomatic that the pressure of jury deliberations is at the very essence of the jury's function (*see generally People v Brown,* 48 NY2d 388 [1979]). As stated by the Court of Appeals in the case of *People v De Lucia* (20 NY2d 275, 278 [1967]): "With regard to juryroom deliberations . . . [c]ommon experience indicates that at times articulate jurors may intimidate the inarticulate, the aggressive may unduly influence the docile. Some jurors may 'throw in' when deliberations have reached an impasse. Others may attempt to compromise. Permitting jurors to testify regarding such occurrences would create chaos." This Court has also held that a verdict should not be rejected due to the allegation of fellow jurors' pressure "in the absence of allegations regarding outside influences on a jury . . . or the discovery of a juror's lack of

qualifications" (*People v Maddox,* 139 AD2d at 598 [internal quotation marks and citations omitted]). The *De Lucia* case and the *Maddox* case were decided in the context of postconviction applications, as opposed to the situation at bar, wherein the juror raised the issue of her fellow jurors' pressure during the polling of the jury's verdict. Nevertheless, the juror's explanation of how she felt pressure within the jury room amounted to little more than comment upon "the tenor of deliberations," and therefore did not provide a basis to reject the verdict (*People v South,* 47 AD3d 734 [2008]; *see People v Lipman,* 254 AD2d 435 [1998]; *People v Maddox,* 139 AD2d at 598).

Accordingly, the fact that the other jurors may have prevailed upon, persuaded, or simply convinced this juror to vote "guilty," does not, in and of itself, impeach their verdict. Therefore, I would affirm the judgment of conviction.