■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT ANDERSON, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Lipp, J.), rendered April 28, 1986, convicting him of burglary in the first degree, burglary in the second degree, robbery in the second degree (three counts), criminal possession of stolen property in the second degree and grand larceny in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

At approximately 2:30 A.M. on the morning of August 14, 1985, the defendant, accompanied by his girlfriend, Jennifer Woodson, her tenant, Gladys Howard, and Lacy Bostick, drove to the victim's home in Westbury, New York. While Howard occupied the female victim at the front door, the defendant and Bostick entered the apartment from the rear. The defendant and Bostick bound the complainant with tape, menaced and repeatedly beat her with a gun and stole her valuables.

On appeal, the defendant contends that his oral and written confessions should have been suppressed as the products of an improper arrest since he was apprehended without probable cause and without a warrant, as well as because the *Miranda* warnings he received were inadequate. He further submits that the stolen property and gun recovered by the police should be suppressed as the fruits of an unlawful search, and that his conviction should be reversed because of a Confrontation Clause violation. He finally argues that the sentence imposed was excessive. The defendant's contentions are without merit.

We note in the first instance that the police had probable cause to arrest the defendant. The instant matter is distinguishable from cases such as *People v Elwell* (50 NY2d 231), where the defendant was linked to a crime by an informant whose basis of knowledge was unknown, and where the only corroborative details witnessed by the police did not suggest any criminal activity. Here, in contrast, the defendant was linked to the crime charged by the victim herself, who was personally acquainted with her attacker, whom she knew as "Rob". The complainant also gave the police a detailed physical description of the defendant, indicated the neighborhood where he resided and stated that he worked as a bus driver. Furthermore, a neighbor supplied the fact that he drove a white or yellow Cadillac, while a local police officer supplied the last name, alias and vehicle registration number; and the complainant's daughter, who also knew the defendant, led the police to the house where the defendant was currently staying, after consulting a number of mutual acquaintances. Therefore, when the police observed the defendant's yellow Cadillac parked outside a house on the street indicated by the complainant's daughter, learned from a resident of the house that "Rob" was inside, saw a man matching the description provided by the complainant lean out of a window and heard him use the known alias, they had probable cause to arrest him for the robbery of which he had been accused.

Nor was the defendant's warrantless arrest improper. The testimony established that, upon being requested to come outside, the defendant either voluntarily exited the building or stood in the front doorway. Although the hearing court did not make a factual determination as to which scenario took place, this failure is inconsequential because either version supports the conclusion that the arrest was legal. It has been held that the rule of *Payton v New York* (445 US 573), prohibiting the police from arresting a suspect in his own

home without a warrant absent exigent circumstances, is not violated where the police, seeing the defendant at his window, direct him to come outside so long as there is "no indication that defendant was in any way threatened" *(People v Minley,* 68 NY2d 952, 953). There is no suggestion in the instant case that the defendant was threatened, so that he was properly arrested upon his voluntary exit from the building. Moreover, assuming that he merely stood in his doorway, the arrest was equally proper since the doorway to a private house has been held to be a "public place" for purposes of Fourth Amendment analysis, since the defendant had no legitimate expectation of privacy while standing there, exposed to public view *(United States v Santana,* 427 US 38).

While the defendant does not challenge the adequacy of the *Miranda* warnings given to him in the late afternoon at the precinct station house just before he gave his full statement, he does contend that those recited to him immediately after his arrest were insufficient. We note that on the earlier occasion, the arresting officer informed the defendant that he had the right to remain silent; that anything he said could and would be used against him in a court of law; that he had a right to an attorney; and that if he could not afford one, one would be provided for him. The law is clear that a police officer need not "mouth 'a ritualistic formula' so long as the words used convey the substance of the *Miranda* rights with all the requisite information" *(People v Jordan,* 110 AD2d 855). We find that the language used in the instant case satisfied the *Miranda* rule.

Nor was the warrantless search of the premises improper since it had been consented to by Jennifer Woodson, who had declared herself to be the owner of the house. The police were therefore justified in relying in good faith on her apparent authority to consent to the search *(People v Adams,* 53 NY2d 1, *cert denied* 454 US 854), and there is no evidence to suggest that her consent was coerced *(People v DePace,* 127 AD2d 847, *lv denied* 69 NY2d 879).

The defendant contends that the admission into evidence of the confessions of his two nontestifying codefendants, both of which incriminated him, denied him his constitutional right to confront the witness against him in violation of *Cruz v New York* (481 US 186). Initially, we note that the defendant's claim is unpreserved for appellate review as a matter of law because the defendant failed to move for a separate trial on this ground and did not object to the admission of the codefendants' confessions *(see, People v Walker,* 71 NY2d 1018). In any

event, although pursuant to the holding of *Cruz v New York (supra)*, decided after the entry of the judgment in this case, the admission of the unredacted codefendants' statements was error, we find that the error was harmless beyond a reasonable doubt *(see, People v Hamlin,* 71 NY2d 750). Although the defendant testified at the trial and repudiated his confession to the extent that it omitted the defense theory that the crimes were committed as an "insurance scam" planned by the complainant, the codefendants' confessions, which were silent on this issue, did not prevent the jury from giving proper consideration of that defense. The evidence of the defendant's guilt was overwhelming. The proof included the victim's identification testimony and the presence of the stolen property and the weapon involved in the crime found in the home occupied by the defendant just hours after the crime *(see, People v West,* 72 NY2d 941; *People v Baptiste,* 135 AD2d 546; *People v Williams,* 136 AD2d 581). Accordingly, there was no reasonable possibility that the erroneously admitted evidence contributed to the defendant's conviction *(People v Hamlin, supra)*.

Finally, we find that the sentence imposed was not excessive *(see, People v Suitte,* 90 AD2d 80). Brown, J. P., Lawrence, Kooper and Spatt, JJ., concur.