■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GUSTAVO REYNOSO, Appellant. [765 NYS2d 54] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Naro, J.), rendered June 30, 2000, convicting him of robbery in the first degree (two counts) and robbery in the second degree (two counts), upon a jury verdict, and imposing

sentence. The appeal brings up for review the denial, after a hearing (O'Dwyer, J.), of that branch of the defendant's omnibus motion which was to suppress statements to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant contends that the hearing court erred in denying that branch of his omnibus motion which was to suppress his confession after his arrest because the police violated his rights under *Payton v New York* (445 US 573 [1980]) by arresting him inside his home without a warrant. We disagree. The testimony established that, upon being requested to come outside, the defendant either voluntarily exited his house, or stood behind his mother, in the front doorway, and stuck his head out of the door. Although the hearing court did not make a factual determination as to which scenario took place, either version supports the conclusion that the arrest was legal (*see People v Anderson*, 146 AD2d 638, 639 [1989]).

We note that, under the scenario adopted by the dissent, the defendant voluntarily came to the front door, stood behind his mother, stuck his head out of the door, inquired as to what was happening, and was arrested when the police grabbed him by his hand. The doorway to a private house is a public place for purposes of Fourth Amendment analysis, since a defendant has no legitimate expectation of privacy while standing there, exposed to public view (*see People v Anderson, supra; People v Schiavo*, 212 AD2d 816 [1995]). Since the defendant was arrested at the threshold of his residence, the defendant's arrest did not implicate *Payton* rights (*see People v Schiavo, supra*).

The defendant further contends that the admission of his codefendant's statement violated his Sixth Amendment right to confrontation under the rule enunciated in *Bruton v United States* (391 US 123 [1968]). We disagree. Prior to the defendant's arrest, the codefendant told a detective that the "lookouts were on the street." After the defendant was arrested, the defendant signed a statement written by the detective, in which he stated, in part, that while the robbery was in progress, he acted as a lookout, and stood by the gas pump on the street. At trial, the defense counsel stated in her opening statement that the defendant's statement was the detective's account of the robbery, not the defendant's.

The defense counsel opened the door to the admission of that portion of the codefendant's limited statement that the "lookouts were on the street," to demonstrate that prior to taking the defendant's statement, the information the detective had regarding the position of the lookouts differed from the

defendant's confession. The defendant's statement was not the detective's account of the incident, as defense counsel claimed (*see Tennessee v Street,* 471 US 409 [1985]; *People v Gladden,* 307 AD2d 367 [2003]; *People v Rodriguez,* 210 AD2d 266 [1994]).

The defendant's remaining contentions are without merit. Feuerstein, J.P., Krausman and Mastro, JJ., concur.

McGinity, J. dissents and votes to reverse the judgment appealed from, on the law and the facts, grant that branch of the defendant's omnibus motion which was to suppress statements made to law enforcement officials, and order a new trial, with the following memorandum: On September 30, 1998, at approximately 9:20 P.M. a robbery allegedly occurred at a Getty gas station in Howard Beach, Queens. The police investigation led to an individual named Jose Mendez who was interrogated on October 15, 1998, and subsequently admitted his participation in the robbery. Mendez told the detective that another person by the name of Gus was one of two persons who acted as lookouts "in the street." Subsequently, Mendez identified the defendant as the lookout.

About two weeks later, without the benefit of an arrest or search warrant, the police went to the defendant's home to arrest him. At the suppression hearing, the defendant's mother testified in relevant part as follows: about midnight, a detective made a telephone call seeking to speak to the defendant while not identifying herself as a police officer. The detective employed a ruse to get the defendant, who was asleep, to come to the front door. Eventually, the detective's attempts bore fruit and the defendant and his mother came to the front door. While standing within their home, both the mother and son, the defendant, put their heads outside the door jamb to see who was calling at this late hour. The detective pushed the mother, reached in and pulled the defendant out of his home, and arrested him. The defendant thereafter was interrogated. However, according to the police version, when the defendant joined his mother at the front door of the home, the defendant voluntarily came outside the house and the police neither entered the house nor forced the defendant to leave.

After being advised of his *Miranda* rights (*see Miranda v Arizona,* 384 US 436 [1966]), the defendant was interrogated and gave a statement that he acted as a lookout during the Getty gas station robbery. The statement, reduced to writing by the detective and signed by the defendant, placed the defendant by the gas pump.

The hearing court denied the defendant's motion to suppress,

concluding that under either version of the events, and without resolving the credibility dispute between the police and the defendant's mother, no *Payton* violation (*see Payton v New York,* 445 US 573 [1980]) occurred.

At trial, the defendant's attorney, in her opening, commented that the People's case would rest on the credibility of the defendant's confession since the victims of the robbery could not identify the defendant as one of the two gunmen who had robbed the gas station. The victims knew nothing about the two lookouts. Defense counsel stated that "this is [the detective's] account of the robbery as the victims' account of the robbery and not the words of [the defendant]." The trial court granted the prosecution's request to permit the detective to refer to Mendez's statement placing the lookouts "in the street" as showing the detectives' knowledge or state of mind and as not being offered for its truth. Subsequently, the defendant was convicted of two counts of robbery in the first degree and two counts of robbery in the second degree.

Since, in my view, a *Payton* violation did occur here and the defendant was deprived of his constitutional right to confront his accuser, a reversal is warranted.

Under *Payton v New York (supra),* it is clear that, absent consent or exigent circumstances, no private dwelling may be entered by the police to arrest its occupant if an arrest warrant has not been obtained. The proscription against entry of a home is the key to *Payton.* "Because physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed (*United States v United States Dist. Ct.,* 407 US 297, 313 [1972]), [the] defendant has no burden to show he had an expectation of privacy in his apartment. Both the Fourth Amendment to the United States Constitution and section 12 of article I of the New York State Constitution expressly provide that the right of the people to be secure in their * * * houses * * * shall not be violated" (*People v Levan,* 62 NY2d 139, 144 [1984] [internal quotation marks omitted]). Under the State Constitution, an independent body of search and seizure law far more expansive than federal law, exists to govern citizen/police encounters when doing so promotes the protection of individual rights from *Payton* violations in recognition of the right to counsel rule (*see People v Harris,* 77 NY2d 434, 439-441 [1991]; *People v Gundersen,* 255 AD2d 454, 454-455 [1998]).

If this Court were to exercise its fact-finding power and make a finding that the hearing testimony of the defendant's mother is credible (*cf. People v Neely,* 219 AD2d 444, 447 [1996]), a

*Payton* violation would be established, as the defendant was arrested in his home in violation of his federal and state constitutional rights to be secure from unreasonable searches and seizures (*cf. People v Levan, supra*). In effect, the police reached into the defendant's home and pulled the defendant over the doorway threshold without his consent. In my view, the "doorway exception" to *Payton,* where police are permitted to enter a home and carry out a warrantless arrest whenever a suspect is standing in the doorway exposed to public view (*see People v Schiavo,* 212 AD2d 816 [1995]; *People v Min Chul Shin,* 200 AD2d 770 [1994]), is not applicable under the facts of this case. Since the defendant was unlawfully arrested, the statement he made to the police should have been suppressed under the New York State Constitution.

Further, the trial court improperly admitted in evidence the statement of Mendez that the gas station robbery lookouts had been standing "in the street." The defendant stated to the police that he was "by the gas pump." The two robbery victims never saw the defendant by the pumps. Thus, Mendez's statement was critical to establish the validity of the defendant's confession as to the crime committed. In my view, the admission of Mendez's statement violated the defendant's confrontation rights as guaranteed by the Sixth Amendment to the US Constitution and the New York Constitution, article I, § 6, since Mendez was available to testify and the statement did not constitute any exception to the hearsay rule (*see Bruton v United States,* 391 US 123, 135-137 [1968]; *cf. Ohio v Roberts,* 448 US 56, 63-64 [1980]).

Mendez's statement that the lookouts were "in the street" was introduced to establish the truth of the matter asserted—to prove that the lookouts had been standing in the street (and not by the gas pumps) when the robbery occurred, thus accounting for the robbery victims' testimony that they did not see anyone by the pumps. Mendez's statement constituted hearsay for which there is no applicable exception. The statement was clearly offered as an assertion as to where the lookouts were located during the robbery and, significantly, no limiting instruction was given as to the substantive evidentiary use of the statement against the defendant.

This violation of the defendant's constitutional rights was not harmless beyond a reasonable doubt (*see People v Crimmins,* 36 NY2d 230 [1975]). To the contrary, Mendez's statement about the placement of the lookouts filled a gap in the People's case (i.e., the robbery victims' eyewitness account), undercutting the defendant's efforts to show that his confession was unreliable.