Angiolillo, J.P.
(dissenting). In our view, the police officers acted lawfully at all stages of their encounter with the defendant. We would hold that the officers properly investigated this matter and appropriately followed through with an immediate arrest inside the doorway of the defendant’s apartment, without infringing upon his constitutional rights. Therefore, we respectfully dissent.
At the suppression hearing, the officers testified that they received a radio run of a possible sexual assault in progress and, upon their arrival at the residence, spoke with the complainant, who was standing outside on the sidewalk and appeared frazzled, upset, and shaken. The complainant told the officers *154 that she had come to the basement apartment of the residence intending to visit her female cousin, who had recently had a baby. The defendant, who was the baby’s father, was home alone with the infant. He invited the complainant inside and subjected the complainant to certain acts of sexual abuse. The complainant indicated that the defendant was still inside the apartment with the baby, and led the officers to the entrance of the apartment. One of the officers knocked, and the defendant opened the door; in response to an officer’s question, the complainant identified the defendant as her assailant. At that point, the defendant attempted to shut the door, but one of the officers prevented the defendant from closing it, pushed his way in, and handcuffed the defendant a few feet inside the apartment.
Under these circumstances, the officers acted properly and did not violate the defendant’s constitutional rights when they approached and knocked on the door of the defendant’s private residence in order to investigate the complaint (see People v Kozlowski, 69 NY2d 761, 762-763 [1987]). At that point, the defendant voluntarily opened his door, exposing himself to the view of persons outside of his residence. It is undisputed that, upon the complainant’s identification of the defendant, the officers had probable cause to arrest him.
Had the defendant not attempted to close the door, the officers properly and constitutionally could have effected an immediate arrest of the defendant in his doorway. Several cases decided after Payton v New York (445 US 573 [1980]) have held that an arrest “at the doorway” or “in the doorway” to a private residence is lawful and constitutional (see People v Reynoso, 2 NY3d 820, 821 [2004] [“the arrest occurred either after defendant exited his home voluntarily or while he stood in his doorway”], affg 309 AD2d 769, 770 [2003] [“upon being requested to come outside, the defendant either voluntarily exited his house, or stood behind his mother, in the front doorway, and stuck his head out of the door” and “either version supports the conclusion that the arrest was legal”]; People v Ashcroft, 33 AD3d 429, 429 [2006], lv denied 8 NY3d 843 [2007], cert denied 552 US 829 [2007] [the defendant “voluntarily opened his door” and the police “reached in and pulled him out as he stood in close proximity to his doorway”]; People v Burke, 24 AD3d 129, 130 [2005] [the defendant was arrested “in the doorway of his apartment”]; People v Francis, 209 AD2d 539, 539 [1994] [the defendant’s arrest “at the doorway of his apartment did not violate Payton“]; People v Rosario, 179 AD2d 442, 442 [1992] [“arrest at the doorway of his apartment did *155 not implicate Payton rights”]; People v Anderson, 146 AD2d 638, 639 [1989] [upon being requested to come outside, the defendant “either voluntarily exited the building or stood in the front doorway” and “either version supports the conclusion that the arrest was legal”]; People v Nonni, 141 AD2d 862, 863 [1988] [the officer announced that the defendant was under arrest when, in response to the officer’s knock, the defendant opened the door and “stood in the doorway”]). The express rationale for these holdings is that the defendant, by voluntarily placing himself in the open doorway and exposing himself to public view, has no legitimate expectation of privacy protected by the Fourth Amendment (see People v Ashcroft, 33 AD3d at 429; People v Reynoso, 309 AD2d at 770; People v Francis, 209 AD2d at 540; People v Anderson, 146 AD2d at 640; People v Nonni, 141 AD2d at 863; see generally United States v Santana, 427 US 38, 40-42 [1976]).
We would hold that, since the officers were authorized to arrest the defendant at his doorway shortly after he opened his door, the defendant was not entitled to thwart a lawful arrest by closing the door and retreating into the constitutionally protected area of his home (see United States v Santana, 427 US at 42; People v Wheatley, 55 AD3d 947, 948 [2008]; People v Mitchell, 290 AD2d 518, 519 [2002]; People v Harris, 193 AD2d 757, 757 [1993]; People v Thomas, 164 AD2d 874, 874-875 [1990]).
Our colleagues in the majority note that, “if the defendant’s encounter with the police had begun outside his home, or even on the threshold of it, the defendant could not have avoided arrest by fleeing into his home,” but conclude that the arrest was unlawful here because the defendant “never left the constitutionally protected interior of his home” (supra at 150). This approach rests on a literal interpretation of the term “threshold” which defines the constitutionally protected area precisely according to the line within the doorframe which separates the outside from the inside. We find this approach neither warranted by the constitutional rationale underlying Santana, nor at all practical as a guideline to inform law enforcement officers in their conduct.
Santana was premised upon the rationale that “ ‘[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection’ ” (427 US at 42, quoting Katz v United States, 389 US 347, 351 [1967]). Apart from the footnote in Santana that described the defendant’s exact position in the *156 doorway (427 US at 40 n 1 [“one step forward would have put her outside, one step backward would have put her in the vestibule of her residence”]), the cases which have followed the rationale of Santana do not rest on such a precise, intractable distinction. Whether the reported decisions in these cases describe the defendant’s position as being “in the doorway,” “at the doorway,” or “in close proximity to the doorway,” it is clear in every such case that the defendants’ behavior evinced an intentional exposure to public view by opening the door or standing in close proximity to the open doorway. By contrast, where a defendant’s behavior communicates that he or she does not intend to be exposed to public view, a warrantless arrest inside the defendant’s home is unlawful (see People v Robert, 156 AD2d 730, 730 [1989] [the defendant “opened the door a ‘crack’ in order to peer out to see who was there” and “the police pushed their way in past the door”]).
As a practical matter, a resident inside his or her abode who opens the door inward will often be standing several inches within the residence. For example, in Reynoso, the Court of Appeals upheld the arrest as constitutional (2 NY3d at 821) despite evidence that the defendant’s body was not on the threshold but inside the home (309 AD2d at 770 [“the defendant . . . stood behind his mother, in the front doorway, and stuck his head out of the door”]; 309 AD2d at 771 [McGinity, J., dissenting] [“While standing within their home, both the mother and son, the defendant, put their heads outside the door jamb to see who was calling at this late hour”]). We would not rest the outcome of a Payton challenge on such a measurement. A police officer investigating a complaint of a recently committed crime will not be focusing on the suspect’s precise position in the open doorway when making the necessary judgment call as to the suspect’s constitutional rights, and the cases upholding arrests “in” or “at the doorway” have not been premised upon such evidence. Instead, distinctions based upon behavior communicate a suspect’s intentions and expectations far more readily than distinctions based upon inches or feet inside or outside a doorway. We do not agree with our colleagues in the majority that the discernment of a suspect’s intentions and expectations presents an impractical or unworkable guideline. Law enforcement officers are routinely called upon in every stop, frisk, and arrest situation to make judgments based upon a suspect’s behavior, and Fourth Amendment protections are premised upon whether the individual has a legitimate expectation of privacy in the situation (see United States v Santana, 427 US at 42).
*157 Further, in our view, People v Levan (62 NY2d 139 [1984]) and Riddick v New York, which is the companion case to Payton (445 US 573 [1980]), do not mandate the approach taken by the majority. In both Riddick and Levan, the police had probable cause to arrest the defendants far in advance of their visits to the defendants’ homes, yet they failed to obtain arrest warrants. In Riddick, the defendant’s behavior did not evince an intent to expose himself to public view; he was fully inside his home, sitting in bed covered by a sheet, when his son opened the door to the police, who were able to see him from outside the house (Payton v New York, 445 US at 578). The holding in Levan was based in part on the lack of exigent circumstances justifying a forcible entry into the suspect’s home. The police arranged a stakeout at the defendant’s apartment building, and when he voluntarily opened the door in response to a neighbor’s knock, the police, “with guns drawn, bypassed the woman, entered the apartment and arrested defendant inside” (62 NY2d at 143). The Court distinguished Santana (427 US at 38) as a “hot pursuit” case in which the police first observed the defendant “while outside her home, holding what they believed to be destructible evidence,” giving rise to exigent circumstances justifying their following her into her home (62 NY2d at 145). By contrast, in Levan “[t]here was an affirmed finding that no exigent circumstances existed” and “the police themselves cannot by their own conduct create an appearance of exigency” (id. at 146). Moreover, subsequent to Levan, the Court of Appeals rejected a Payton challenge to an arrest that “occurred either after defendant exited his home voluntarily or while he stood in his doorway,” determining either circumstance to be lawful (People v Reynoso, 2 NY3d at 821). The situation in Reynoso is closer to that in the instant case than the situation in Levan.
Accordingly, we would agree with the trial court that the defendant’s arrest was lawful and does not provide a basis for suppressing his statements to law enforcement officials. Further, we would affirm the conviction, as we find the defendant’s remaining contentions to be without merit.
Lott and Austin, JJ., concur with Balkin, J.; Angiolillo, J.P., dissents in an opinion in which Roman, J., concurs.
Ordered that the judgment is reversed, on the law, that branch of the defendant’s motion which was to suppress his statement to law enforcement officials is granted, and a new trial is ordered.