OPINION OF THE COURT
Titone, J.
In this case appellant challenges the propriety of a postverdict robing room proceeding during which supplemental legal instructions were given to a single juror. We conclude that under the circumstances presented, the trial had not ended as a matter of law when the jury rendered a verdict, and that as a result the robing room proceeding must now be deemed part of appellant’s trial. Accordingly, appellant’s absence from that proceeding requires reversal regardless of whether any actual prejudice or harm is shown (see, People v Mehmedi, 69 NY2d 759; People v Ciaccio, 47 NY2d 431, 436-437; CPL 310.30; cf. People v Darby, 75 NY2d 449).
Appellant Asher Cain and codefendants Dawson Sharpe and David Jones were charged with robbery in the first degree, kidnapping in the second degree, burglary in the first degree, and six counts of unlawful imprisonment in the first degree. The charges arose out of an incident in which the complainant Cecil Kerrutt, a Brooklyn restaurant owner, was accosted outside of his restaurant by three armed men who demanded all of Kerrutt’s money. Kerrutt said that he could give them the day’s receipts he had in the restaurant, but one of the men, allegedly Dawson Sharpe, replied that they wanted $50,000. When Kerrutt told them that he did not have that amount of money, Sharpe allegedly responded, "We know you *122 have it. You have it at home.” Kerrutt was then driven to his home, where the armed intruders forcibly detained six family members while ransacking the house looking for jewelry and the desired $50,000 in cash. After expressing dissatisfaction with the small amount of money they found in Kerrutt’s home, the robbers decided to return to Kerrutt’s restaurant to see if the $50,000 could be found there. During this trip, codefendant Sharpe allegedly remained in Kerrutt’s home holding his family hostage. Kerrutt, who had been taken back to the restaurant by appellant and Jones, escaped while inside the restaurant.
All of the charges against each defendant were submitted to the jury. After the jury announced that it had reached a verdict, the foreperson stated that the jury had found Sharpe and appellant guilty of all counts and had acquitted Jones on all counts. Counsel for Sharpe then asked that the jury be polled. During the poll, when asked by the court clerk "Is that your verdict?”, juror number seven equivocated, inquiring whether he could talk to the Trial Judge in private. After receiving an affirmative answer, the juror indicated that his verdict as to Sharpe was guilty on all counts. The polling then continued without further event. Upon appellant’s counsel’s request, the jurors were polled on their verdict against appellant, and each juror, including number seven, responded affirmatively to the clerk’s question, "Is that your verdict?”
After the jury poll had been completed, the court specifically stated: "Before I accept your verdict as recorded, I want you to return to the jury deliberating room. Juror Number Seven apparently has some questions to ask, and I will ask [him] to put those questions on a piece of paper and put it in an envelope and send it down to me, and then I will decide what I’m going to do, whether or not I’m going to accept the verdict depending on what the questions are and what the problems may or may not be, all right.” (Emphasis supplied.) When juror number seven’s note proved unintelligible, the court, the prosecutor and the attorneys representing Sharpe and appellant agreed that the juror should be brought to the Judge’s robing room for questioning. Although the attorneys were present at this proceeding, the defendants, including appellant, were not.
As the robing room colloquy between the Judge and the juror began to unfold, it became apparent that the juror was unclear on the law concerning the theory of acting in concert. *123 In an effort to dispel the juror’s confusion, the Judge repeated his initial instructions and an example that he had originally given during the voir dire. The robing room discussion also touched upon some of the juror’s specific conclusions concerning the defendants’ specific locations while they were in Kerrutt’s home, and a brief reference to the substance of the jury’s deliberations which was cut short when the Judge instructed the juror to avoid mentioning that subject. The colloquy ended when juror number seven stated that the court’s explanation of mental culpability had clarified his problem, and that his verdict as to both appellant and Sharpe was guilty. Appellant’s counsel interposed objection to the colloquy on the sole ground that the court had not afforded him an opportunity to question the juror.
Thereafter, the Judge returned the entire jury to the courtroom, and in the presence of all parties, including appellant, stated, "[now] that we’ve clarified Juror Number Seven’s question * * * / will now accept your verdict as recorded. ” (Emphasis supplied.) The court then discharged the jury.
On his appeal to the Appellate Division, appellant contended that his statutory and constitutional rights to a unanimous verdict and to be present during trial had been violated by the robing room inquiry. In addition, he argued that his kidnapping conviction should have been deemed, as a matter of law, to have merged with his robbery conviction. The Appellate Division affirmed the judgment of conviction, and a Judge of this court granted leave to appeal. We now reverse.
In People v Ciaccio (47 NY2d 431, supra) we recognized that a defendant has a right to be present, with counsel, at all material stages of a trial (id., at 436; see, People v Mehmedi, 69 NY2d 759, 760-761, supra; People v Mullen, 44 NY2d 1; People ex rel. Bartlam v Murphy, 9 NY2d 550, 553; Maurer v People, 43 NY 1; CPL 310.30; see also, Snyder v Massachusetts, 291 US 97, 105-106), including "all proceedings dealing with the court’s charge, admonishments and instructions to the jury, where the court is required to state the fundamental legal principles applicable to criminal cases generally, as well as the material legal principles applicable to a particular case and the application of the law to the facts” (People v Ciaccio, supra, at 436). Specifically addressing supplemental instructions, the court noted that since they "com[e] after the jury has already once retired, they may well be determinative of the outcome of the case, coming as they do in response to *124 questions raised by the jurors themselves.” (Id.) Consequently, the court concluded that the presence of the defendant and his counsel during supplemental instructions is constitutionally, as well as statutorily, required (id., at 436-437; see, US Const 6th Amend; NY Const, art I, § 6; CPL 310.30). Finally, in People v Mehmedi (supra), we held that the absence of the accused during supplemental instructions presents an error of law mandating reversal even in the absence of objection (id., at 760; People v Ciaccio, supra, at 436-437), and that an inquiry into prejudice is inappropriate (People v Mehmedi, supra, at 760).
Here, it is clear that the robing room colloquy, which included a discussion of the applicable legal principles, constituted, at least in part, the giving of "further instruction[s]” within the meaning of CPL 310.30. Thus, appellant had an absolute right to be present, and the failure to accord him that right mandates reversal unless, as the People contend, appellant’s trial had already ended by operation of law when the jury’s verdict on the charges pertaining to him was announced and confirmed through a formal poll.[1]
Under the facts of this case, we conclude that the trial had not ended. Although the foreperson announced that appellant had been found guilty and the subsequent jury poll revealed no apparent discrepancy, the trial court’s actions, including its decisions to defer "acceptance” of the entire verdict and to permit appellant’s counsel to participate in the postverdict colloquy, make clear that the court itself did not consider appellant’s trial to be at an end. Accordingly, appellant had a constitutional and statutory right to be personally present at this colloquy in which legal instructions were given, and the fact that juror number seven’s reservations may or may not have been limited to codefendant Sharpe is irrelevant. Under our case law, appellant is entitled to reversal without regard to whether any actual prejudice flowed from his absence.[2]
Finally, we agree with appellant’s additional contention that the trial court erred in denying his motion to dismiss the *125 kidnapping count on the ground that it had merged with the robbery count. "The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not be fairly attributed to them.” (People v Cassidy, 40 NY2d 763, 767; see, People v Lombardi, 20 NY2d 266; People v Levy, 15 NY2d 159, cert denied 381 US 938.) Here, the asportation and restraint of Kerrutt from the restaurant to his home and back was incidental to and inseparable from the defendant’s over-all scheme of taking $50,000 from Kerrutt (see, People v Smith, 47 NY2d 83, 87). Indeed, the return trip to the restaurant was necessary only because the $50,000 was not found at Kerrutt’s home. In this regard, we reject the People’s contention that the robbery of Kerrutt was completed in the restaurant parking lot, and that the trip to Kerrutt’s home and back was a "change[ ] in purpose and direction” (People v Miles, 23 NY2d 527, 539), sufficient to constitute the independent crime of kidnapping and remove this case from the Levy-Lombardi rule (see, e.g., People v Riley, 70 NY2d 523). Hence, the doctrine of merger precludes appellant’s separate conviction of kidnapping in the second degree (Penal Law § 135.20), and requires that the kidnapping charge of the indictment be dismissed (see, People v Lombardi, supra, at 273).
For the foregoing reasons, the kidnapping charge should be dismissed from the indictment, and appellant’s conviction must be reversed, and a new trial ordered on the remaining counts.

. The robing room colloquy was also violative of CPL 310.30 for the additional reason that the statute does not contemplate the giving of supplemental legal instructions to a single juror in the absence of the remaining jurors (see also, CPL 260.30, 270.45).

. Since we are reversing the conviction and ordering a new trial, we need not decide whether the trial court’s polling procedure was proper (see, People v Pickett, 61 NY2d 773). In any event, this claim is not preserved for our review (see, People v Williams, 70 NY2d 946).