◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DERRICK HAMILTON, Appellant.—Appeal by the defendant
from two judgments of the Supreme Court, Kings County
(Lagana, J.), both rendered May 9, 1989, convicting him of
attempted murder in the second degree, rape in the first
degree (6 counts), sodomy in the first degree (6 counts), rob-
bery in the first degree (8 counts), sexual abuse in the first
degree (5 counts), assault in the first degree (3 counts), grand
larceny in the third degree (5 counts), criminal use of a
firearm in the first degree, and criminal possession of stolen
property in the third degree, under Indictment No. 1980/86,
after a nonjury trial, and imposing sentence, and murder in
the second degree under Indictment No. 3642/86, after a
nonjury trial, and imposing sentence. The appeal brings up for
review the denial, after a hearing, of that branch of the
defendant's omnibus motion which was to suppress certain
identification testimony.

Ordered that the judgments are affirmed.

Between September of 1985 and March of 1986, the defen-
dant raped, sodomized, sexually abused, robbed and assaulted
eight young men and women in Brooklyn. As his crime
rampage progressed, the defendant's attacks became increas-
ingly more violent: he inflicted multiple stab wounds on two of
his victims, and strangled to death and then set fire to a third.
At the trial, the defendant offered expert testimony to show
that he was insane when he committed these crimes.

Where conflicting expert testimony is presented at a trial,
the question of sanity is for the fact-finder, who has the right
to accept or reject the opinion of any expert (People v Wood,
12 NY2d 69, 77; People v Robertson, 123 AD2d 795). "Where,
as here, there is an absence of a serious flaw in the testimony
of the People's expert, the [trier of fact's finding] of sanity will
not be disturbed" (People v Enchautegui, 156 AD2d 461; People
v Briecke, 143 AD2d 1025; People v Golpe, 134 AD2d 449;
People v Robertson, supra). Here, there was no documented
history of psychosis (cf., People v Hull, 162 AD2d 550, 551),
and the People's experts presented compelling evidence that
the defendant was an antisocial malingerer. In consequence,
there is no reason to disturb the court's finding of sanity.

There is no merit to the defendant's suggestion that the
lineups held on March 28, 1986, were unfair because he had
the lightest skin in the array. Where, as here, "[a]n examina-

tion of the hearing testimony reveals that the lineup stand-ins were all similar to the defendant in terms of ethnic background, height, weight and age", a pretrial lineup will be found not to be unduly suggestive *(People v Diaz,* 138 AD2d 728). "There is no requirement * * * that a defendant in a lineup be [accompanied] by [individuals] nearly identical in appearance" *(People v Chipp,* 75 NY2d 327, 336, *cert denied* 498 US 833; *People v Rotunno,* 159 AD2d 601).

The defendant also claimed that the lineups were unfair because two of his victims had seen media coverage of his arrest. However, although one victim testified at the *Wade* hearing that she had read a newspaper article about the defendant's arrest, she believed that it was *after* she had identified the defendant in the lineup. The second victim, who may or may not have seen media coverage of the arrest of the defendant, had spent 7½ hours with him, being repeatedly raped and sexually abused. Her testimony that she had an independent recollection of the defendant was therefore properly credited by the hearing court. Consequently, the hearing court did not err in ruling that the defendant had not proved that the lineups were impermissibly suggestive *(see, People v Stephens,* 143 AD2d 692, 695), or that there was *any* risk of irreparable misidentification *(see, People v McClarin,* 157 AD2d 747).

There is also no merit to the defendant's contention that he was deprived of *Rosario* or *Brady* material because of the People's failure to produce the *original* copy of his post-arrest statement, rather than an identical photocopy, and/or because of their failure to supply him with a copy of his own resume, which the defendant had in his possession when he was arrested. Neither of these documents constitutes either *Rosario* or *Brady* material, because neither is a prior recorded statement of a prosecution witness, nor is either document evidence which either tends to exculpate him or that he could have used to impeach a prosecution witness *(see,* CPL 240.45 [1]; *People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866; *Brady v Maryland,* 373 US 83). Mangano, P. J., Harwood, Miller and Santucci, JJ., concur.