[18 NE3d 367, 993 NYS2d 656]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANNER RIVERA, Respondent.

Argued May 8, 2014; decided June 10, 2014

828

## POINTS OF COUNSEL

*Charles J. Hynes, District Attorney*, Brooklyn (*Adam M. Koelsch* and *Leonard Joblove* of counsel), for appellant. Defendant's claim regarding a conversation between the trial court and a juror in the absence of defendant is unpreserved, and does not fall within the "mode of proceedings" exception to the preservation requirement, because the court promptly informed defendant and his attorney of the content of the conversation and offered to read back that conversation. (*People v Kelly*, 5 NY3d 116; *People v Autry*, 75 NY2d 836; *People v Creech*, 60 NY2d 895; *People v Patterson*, 39 NY2d 288, 432 US 197; *People v Agramonte*, 87 NY2d 765; *People v Becoats*, 17 NY3d 643; *People v Hawkins*, 11 NY3d 484; *People v Starling*, 85 NY2d 509; *People v O'Rama*, 78 NY2d 270; *People v Casey*, 95 NY2d 354.)

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*Kathleen Whooley* of counsel), for respondent. The Appellate Division correctly held that, when the court conducted an ex parte conversation with a deliberating juror about the very issue the jurors were struggling to decide, in violation of Anner Rivera's constitutional right to be present, it committed a "mode of proceedings error" that could not be "cured" by its summarizing of the conversation for Mr. Rivera and the attorneys after the fact. (*People v O'Rama*, 78 NY2d 270; *People v Cain*, 76 NY2d 119; *People v Mehmedi*, 69 NY2d 759; *Illinois v Allen*, 397 US 337; *People v Williams*, 85 NY2d 945; *People v Epps*, 37

NY2d 343; *People v Dokes*, 79 NY2d 656; *People v Parker*, 57 NY2d 136; *People v Favor*, 82 NY2d 254.)

## OPINION OF THE COURT

GRAFFEO, J.

The primary issue before us is whether the trial court's violation of defendant's right to be present during a supplemental jury instruction to a single juror constitutes a mode of proceedings error entitling defendant to a new trial. We conclude that, under the circumstances of this case, it does and therefore affirm.

Andres Garcia shot a friend of defendant Anner Rivera five or six times and then allegedly pointed the gun at defendant, who fired back and killed Garcia. After defendant was indicted for intentional murder (*see* Penal Law § 125.25 [1]) and weapon possession (*see* Penal Law § 265.03 [1] [b]; [3]), he asserted that he had shot Garcia in self-defense. At defendant's request, the court instructed the jury on the defense of justification for each count (*see* CJI2d[NY] Penal Law § 35.15).

On the second day of deliberations, the jury sent a series of notes seeking further explanation of the meaning of "justified" and inquiring as to "when exactly by law" it could consider defendant to be in "imminent danger." Counsel and the court agreed to advise the jury that this was a question of fact for jury determination. During the instruction, one juror commented that this was the jury's "main complication" and the court responded by encouraging the jury to continue deliberations.

Soon after, an off-the-record bench conference was held between the judge, prosecutor and defense counsel. When the record resumed, the judge stated that juror number 11 had requested to speak with the court and, with the consent of the attorneys, he would hear the juror's concerns on the record in the robing room. There is no indication that defendant was present for or aware of his lawyer's acquiescence to this procedure. The following exchange then occurred in the robing room and outside the presence of defendant and counsel:

> "JUROR #11: My question is in relation to that question. I just want to know by the law, when can we be considered to deem defendant, I guess, responsible? That's the big issue with some of us.

> "THE COURT: That's understandable, but I can't, there is no legal definition other than what I've

given you. All the rest depends on an interpretation of the evidence, as I said, in the courtroom. This is a fact question for you to determine what the facts are from the evidence and make your determination. There is no more help I can give you.

"JUROR #11: It's like the facts say both, say both, but more or less one or the other if depending upon when certain people are saying well, it's considered one's right before the actions took place, others are saying it's considered once they arrived to the scene that you could say that you should determine and that's the thing we really—

"THE COURT: You have to work it out among yourselves and come to a determination that all of you feel comfortable with, so you just have to just work it out, look at the evidence and, you know, evaluate what you've heard and make a decision. . . .

"THE COURT: I think that our discussion here should remain between us and basically—

"JUROR #11: Basically what you covered in the courtroom.

"THE COURT: It's exactly what I said in the courtroom. I can't give you any more guidance than that."

Upon reentering the courtroom, the judge informed the attorneys that juror number 11 had requested "guidance" regarding when someone could be considered to be in "imminent danger." The court summarized its response to the juror and stated that the colloquy was available for readback. Realizing that defendant was absent, the court had defendant returned to the courtroom, again gave a condensed version of the discussion, and explained that the transcript was available for review. Neither counsel voiced an objection or requested a readback.

The jury acquitted defendant of murder and manslaughter, but convicted him of second-degree criminal possession of a weapon (see Penal Law § 265.03 [3]). The Appellate Division reversed and granted defendant a new trial, holding that the robing room colloquy constituted a mode of proceedings error (102 AD3d 893, 894 [2d Dept 2013]). A Judge of this Court granted the People leave to appeal (21 NY3d 1008 [2013]).

Typically, preservation is a prerequisite to our appellate review, which is limited to questions of law (*see* NY Const, art VI, § 3 [a]; CPL 470.05, 470.35; *People v Patterson*, 39 NY2d 288, 294-296 [1976], *affd* 432 US 197 [1977]). In criminal cases, however, we have long applied a "very narrow" exception to the requirement of a timely objection with respect to a limited class of errors that "go to the essential validity of the process and are so fundamental that the entire trial is irreparably tainted" (*People v Kelly*, 5 NY3d 116, 119-120 [2005]; *see People v Mehmedi*, 69 NY2d 759, 760 [1987], *rearg denied* 69 NY2d 985 [1987]; *Patterson*, 39 NY2d at 294-296). As such, these "mode of proceedings" errors are "immune from the requirement of preservation" (*Kelly*, 5 NY3d at 120; *see People v Collins*, 99 NY2d 14, 17 [2002]).

A defendant's fundamental constitutional right to be present at all material stages of a trial encompasses a right to be present during the court's charge, admonishments and instructions to the jury (*see* CPL 260.20; *People v Harris*, 76 NY2d 810, 812 [1990]; *Mehmedi*, 69 NY2d at 760-761; *People v Ciaccio*, 47 NY2d 431, 436-437 [1979]). This "absolute and unequivocal" right is further embodied in CPL 310.30 (*Mehmedi*, 69 NY2d at 760; *see Collins*, 99 NY2d at 17).

Under CPL 310.30, when a deliberating jury requests further instruction or clarification on the law, trial evidence, or any other matter relevant to its consideration of the case, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant," the court must give such information or instruction as it deems proper (CPL 310.30; *see Collins*, 99 NY2d at 17). We have consistently held that a defendant's absence during nonministerial instructions, in violation of CPL 310.30, affects the mode of proceedings prescribed by law and presents an error of law for our review—even absent an objection or where defense counsel has consented to the procedures used (*see Collins*, 99 NY2d at 17; *People v Cain*, 76 NY2d 119, 124 [1990]; *Harris*, 76 NY2d at 812 n; *Mehmedi*, 69 NY2d at 760).

The People argue that reversal is not required in this case because, even assuming that a mode of proceedings error occurred, it was substantially cured by the trial court. Defendant counters that "curability" is antithetical to the concept of mode of proceedings errors and asserts that the purported cure here was insufficient.

In *People v Cain* (76 NY2d 119 [1990]), the trial court engaged in a robing room colloquy with a single juror in the presence of the attorneys—but not the accused—during which the court repeated to the juror a substantive instruction previously given to the entire jury. As in this case, defense counsel did not object to the defendant's absence. We concluded that the robing room discussion violated CPL 310.30 because the defendant had an absolute right to be present and therefore, the error "mandate[d] reversal" without regard to whether any prejudice flowed and despite the presence and consent of defense counsel (*id.* at 124). We find *Cain* to be controlling here.

Whether defendant's presence may have had an impact on the court's colloquy with a deliberating juror—as opposed to, for example, a discussion between the court and counsel—is irrelevant under the unequivocal mandate of CPL 310.30 and *Cain* (*see Collins*, 99 NY2d at 18-19; *Cain*, 76 NY2d at 124; *Mehmedi*, 69 NY2d at 760; *compare People v Roman*, 88 NY2d 18, 26 [1996], *rearg denied* 88 NY2d 920 [1996]). Rather, our precedent recognizes only one clear exception to the defendant's right to be present under CPL 310.30, which is actually not an exception at all—namely, there is no violation when a communication is ministerial and therefore does not fall within the ambit of a supplemental jury instruction (*see Collins*, 99 NY2d at 17-18; *People v Hameed*, 88 NY2d 232, 240-241 [1996], *cert denied* 519 US 1065 [1997]; *Harris*, 76 NY2d at 812).

Here, as in *Cain*, juror number 11's questions requested further substantive instruction on a primary issue in the case—the application of the justification defense. Although the trial court initially informed the juror that it had already given the jury the full instructions to which it was entitled, the court then proceeded to tell the juror "to work it out . . . and come to a determination" by evaluating the evidence. This exchange was not ministerial (*see Collins*, 99 NY2d at 17; *cf. People v Torres*, 72 NY2d 1007, 1009 [1988]; *compare People v Williams*, 21 NY3d 932, 935 [2013]; *People v Bonaparte*, 78 NY2d 26, 30-31 [1991]; *Harris*, 76 NY2d at 812). Moreover, to the extent that the dissent assumes that *People v Bragle* (88 NY 585 [1882]) and *People v Morales* (80 NY2d 450, 457 n 2 [1992]) may be read together to create a "de minimis" exception to a defendant's right to be present during supplemental jury instructions, neither of those

cases arose under CPL 310.30, and the facts of this case are plainly distinguishable (*compare Bragle*, 88 NY at 589-590).[1]

Finally, contrary to the view of the People and the dissent, *People v Kelly* (5 NY3d 116 [2005]) and *People v Kadarko* (14 NY3d 426 [2010]) do not persuade us to reach a different result. Our conclusion that preservation was required in those cases necessarily followed from our determinations that no mode of proceedings error had occurred. Even accepting the People's contention that a violation of a defendant's right to be present during supplemental jury instructions may be "cured" or requires preservation in certain contexts (*cf. Williams*, 21 NY3d at 935; *People v Ippolito*, 20 NY3d 615, 625 [2013]), here, the trial court's response was inadequate to remedy the error (*see generally People ex rel. Lupo v Fay*, 13 NY2d 253, 257 [1963], *cert denied* 376 US 958 [1964]).[2] Thus, we hold that under *Cain* and related precedent, an error of law has been presented for our review and defendant is entitled to a new trial.[3]

Accordingly, the order of the Appellate Division should be affirmed.

ABDUS-SALAAM, J. (dissenting). Because, contrary to the majority's determination (*see* majority op at 829, 832-833), the trial court committed a de minimis violation of defendant's right to be present rather than a mode of proceedings error, I respectfully dissent and vote to reverse the order of the Appellate Division.

A criminal defendant's statutory and constitutional right to be present at the material stages of his or her trial derives from the fear that, in the defendant's absence at such material proceedings, he or she will be denied a full opportunity to defend against the charges or be confronted with the appearance of

1. The dissent expresses concern that the foregoing principles encourage "gamesmanship." In response, we note that most substantive inquiries by jurors fall within the confines of *People v O'Rama* (78 NY2d 270 [1991]) and adherence to the procedures that we articulated decades ago in that case minimizes any such problem.

2. Although our ruling is premised on a violation of defendant's right to be present under CPL 310.30 and *People v Cain*, we further note that CPL 310.30 "does not contemplate the giving of supplemental legal instructions to a single juror in the absence of the remaining jurors" because substantive communications with one juror could influence the entire panel if unwittingly misinterpreted or mischaracterized (76 NY2d 119, 124 n 1 [1990]; *see United States v United States Gypsum Co.*, 438 US 422, 460-461 [1978]).

3. The People raise no issue on appeal with regard to whether justification was properly charged for any count.

impropriety attendant to wholly secret trials (see *Kentucky v Stincer*, 482 US 730, 745 [1987] ["a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"]; *Snyder v Massachusetts*, 291 US 97, 105-106 [1934] [defendant has a right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge"]; *People v Morales*, 80 NY2d 450, 456 [1992] ["To the extent there is a concern about secret trials, defendant's presence serves a symbolic function" regardless of defendant's "potential contribution to the proceedings"]; *People v Bragle*, 88 NY 585, 590 [1882] [the old statute guaranteeing the right to be present "was evidently meant for the protection of the prisoner, and a substantial performance was all which was required"]; *Maurer v People*, 43 NY 1, 4 [1870] [right to be present under old statute had to be honored so "that the accused have the opportunity of correcting any error in the answers, or of calling attention to other parts of the evidence explanatory thereof, or that may modify its effect"]; *cf. People v Colascione*, 22 NY2d 65, 70-71 [1968] ["here, opportunity to act" with respect to the court's inquiry of the jury "was withdrawn from counsel" and defendant, thus violating defendant's right to be present, and "(t)here was no contemporaneous record" of ex parte proceedings]).

To prevent the deprivation of a defendant's opportunity to provide meaningful input or to object to a court's actions at important proceedings, we have held that a defendant's significant absence from a material, nonministerial stage of the trial results in a mode of proceedings error, which need not be preserved, cannot be waived and requires reversal of the conviction (see *People v Cain*, 76 NY2d 119, 124 [1990]; *People v Mehmedi*, 69 NY2d 759, 760 [1987]). However, under some circumstances, where the defendant either could not have provided meaningful input on, or eventually has an opportunity to object to and cure, a court's brief ex parte conduct during jury deliberations, no mode of proceedings error occurs, and the court commits only a de minimis violation of the right to be present, which does not warrant reversal (see *People v Collins*, 99 NY2d 14, 18-19 [2002]; *People v Roman*, 88 NY2d 18, 26 [1996]; *People v Morales*, 80 NY2d 450, 457 n 2 [1992]).

Here, the trial court committed a de minimis violation of defendant's right to be present. Once defense counsel and the prosecutor suggested to the court that it should speak to juror

outside the presence of the parties, the court followed that recommendation, and as far as the record shows, the court did not know in advance that the juror intended to inquire about the court's previous response to the jury's note. When the juror asked the court "when can we be considered to deem defendant, I guess, responsible," the court briefly replied, in sum and substance, that it could not help the juror or provide any guidance on that matter beyond what it had already told the entire jury. Neither defendant nor his attorney could have meaningfully contributed to what was basically the court's nonanswer to the juror's question. And, after the robing room conversation, the court summarized the contents of the conversation for defendant and offered a readback, thereby offering him a full opportunity to inform the court of anything the court should have said to the juror and to recommend curative measures if needed. Importantly, too, the court maintained the transparency of the proceedings by receiving the lawyers' consent in advance of the robing room conversation, informing the parties of the content of the conversation and making available a transcript of the conversation. Since defendant's absence from the court's discussion with juror 11 did not " 'ha[ve] a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge' " (*People v Ciaccio*, 47 NY2d 431, 436 [1979], quoting *Snyder*, 291 US at 105-106) or cause the proceedings to remotely resemble a "secret trial[ ]" (*Morales*, 80 NY2d at 456), the court committed, at most, a de minimis violation of defendant's right to be present rather than a mode of proceedings error.*

---

* The majority essentially posits that, in enacting CPL 310.30, the legislature implicitly overruled so much of our precedent in *Bragle* and *Morales* as establishes that some violations of the right to be present are de minimis. Thus, in the majority's view, CPL 310.30 requires a defendant's presence at every interaction between the court and a juror, save for those proceedings that may be labeled ministerial (*see* majority op at 832-833). But, at the time it passed that statute, the legislature presumably knew of our previous holdings that no mode of proceedings error occurs when a defendant's absence from a portion of jury deliberations neither deprives the defendant of the opportunity to meaningfully defend against the charges nor creates the appearance of a secret trial (*see Matter of Knight-Ridder Broadcasting v Greenberg*, 70 NY2d 151, 157 [1987]). With apparent awareness of that precedent, the legislature expressed no intent to dispose of it, as nothing in the text or legislative history of CPL 310.30 reflects a desire to end our preexisting decisional framework regarding the right to be present (*see* CPL 310.30; Mem of Commn on Rev of Penal Law and Crim Code, Bill Jacket, L 1970, ch 996 at 12). Indeed, in recognition that CPL 310.30 embodies the same commonsense

*People v Kelly* (5 NY3d 116 [2005]) is instructive on this point, even though the defendant in *Kelly* did not expressly frame his appellate claim in terms of his right to be present. In *Kelly*, a court officer entered the jury room and conducted a demonstration using the alleged murder weapon in the absence of the defendant and his attorney (*see id.* at 118). When the officer later informed the court and the parties of the demonstration, defense counsel consulted with the defendant and then had the court issue a curative instruction (*see id.*). Despite the defendant's complete absence from the court officer's interaction with the jurors regarding the murder weapon, we held that no mode of proceedings error had occurred (*see id.* at 117-121). In particular, we observed that the defendant had not objected to the court's supposed failure to supervise the court officer during the deliberations, instead only seeking a curative instruction, and we said:

> "the court officer did not have the last word; the court did, after it continued to exercise full and proper control of the trial. By airing the problem, the trial court gave defendant an opportunity to object to the court officer's demonstration. The record is devoid of an objection; instead, defendant obviously wanted the case to go to verdict, and was satisfied with a curative instruction. In all, the impropriety was protestable but unprotested, curable and cured" (*id.* at 121).

In the instant case, defendant was similarly absent from a brief portion of the proceedings that could not have had any real impact on the jury's deliberations, and the court aired the problem and invited input from defendant, who apparently had none to offer. Defendant was satisfied with the court's actions, and as in *Kelly*, no mode of proceedings error occurred (*see generally People v Kadarko*, 14 NY3d 426, 428-429 [2010]).

Along those lines, in *People v Collins* (*supra*), we declined to reverse the defendant's conviction based on a de minimis violation of the right to be present akin to the one that occurred here. There, the defendant was present when the trial court

---

approach to the right to be present as our prior precedent, we have concluded that the statute implicitly tolerates a defendant's absence from ministerial proceedings because, while the court may provide a deliberating juror with information of some kind at such proceedings, that information is not so significant as to necessitate the defendant's presence and input, which would be of little value (*see People v Harris*, 76 NY2d 810, 812 [1990]).

granted defense counsel's request to add an instruction to the verdict sheet telling the jury to consider certain burglary counts in the alternative (*see Collins*, 99 NY2d at 16). The defendant was absent, however, when counsel and the court drafted the specific language of the instruction on the verdict sheet, and he remained absent during counsel's motion for a trial order of dismissal (*see id.*). We concluded that the trial court had not committed a mode of proceedings error in violation of the defendant's right to be present by drafting the language of the instruction in the defendant's absence (*see id.* at 18-19). In finding that the court's action was "ministerial" and did not implicate the defendant's fundamental procedural rights, we noted that the defendant's "presence was unnecessary" at the disputed portion of the proceedings insofar as it "involved a purely legal argument to which defendant had nothing to contribute" (*id.* at 18-19). So, too, defendant here was present during the major part of the court's and the lawyers' substantive discussion of the issue identified in the jury note, which prompted juror 11's robing room inquiry, and defendant missed only the court's short refusal to assist the juror further on that subject, to which defendant could have added nothing of value. Therefore, defendant's fleeting absence from the interaction between the court and the juror does not warrant the invalidation of his conviction.

By striking down defendant's conviction based on a de minimis error that occurred at defense counsel's instigation and with defendant's eventual acquiescence, the majority risks encouraging gamesmanship without promoting the interests underlying the right to be present. Under the majority's holding, a conscientious defense counsel has every reason to encourage a trial court to conduct insignificant proceedings in the defendant's absence, knowing that the court's actions will not meaningfully affect the jury's consideration of the case and will provide a guaranteed reversal of a conviction on appeal. In instigating this error without moving for a mistrial, counsel incurs little, if any, risk. The court's insignificant interaction with a juror or jurors in the defendant's absence is unlikely to jeopardize the defendant's chance to receive an acquittal from the jury, and should the jury convict the defendant, as it presumably would have done regardless of its ex parte contact with the court, counsel's successful effort to prompt the court's de minimis error guarantees the defendant a reversal and a shot at a more favorable result on retrial. While the promotion of such

undesirable legal strategies sometimes may be a tolerable side effect of the protection of defendants' most basic rights, we should not create perverse incentives for litigants where, as here, trial courts have not significantly infringed on their rights (*see People v Acevedo*, 17 NY3d 297, 302-303 [2011, Lippman, Ch. J.] [denying defendants relief because they sought to use a procedural resentencing maneuver purely as a form of gamesmanship meant to avoid proper sentencing consequences rather than to vindicate the interests underlying their entitlement to resentencing]).

The facts of this case reveal the benefits the majority risks conferring upon those who "sit idly by while error is committed, thereby allow the error to pass into the record uncured, and yet claim the error on appeal" (*People v Patterson*, 39 NY2d 288, 295 [1976]). Defense counsel encouraged the court to conduct a small part of the proceedings during deliberations in defendant's absence, and thereafter counsel and defendant learned of the relatively unimportant contents of the ex parte proceedings and could have further examined them. Had either defendant or his lawyer requested a mistrial based on the de minimis irregularity, defendant would have faced the unappealing prospect of another trial on all charges in the indictment, including intentional murder. By instead staying silent, allowing the error to occur and seeking a chance at acquittal, the defense reaped a far greater reward than would have flowed from a timely and readily available objection. Had the jury convicted defendant of all charges, he would still have won an automatic reversal and a retrial five years later when witnesses' memories may have faded, and if the jury had acquitted him outright, he would have been a free man. In fact, defendant received nearly the maximum benefit of his and his lawyer's silence because he was acquitted of the most serious charges, thereby eliminating the risk of retrial for murder, and accrued only a weapons possession conviction, for which he may now receive a retrial. While more serious legal violations may appropriately bring about such an outcome, nothing about the trial court's practice here justifies this result.

The majority says that jurors seldom ask for information from the court without sending a written note and compelling the court to follow the *O'Rama* procedure (*see People v O'Rama*, 78 NY2d 270 [1991]), so only rare cases will create opportunities for defense attorneys to lead trial judges down the garden path to the sort of de minimis error that, in the majority's view, war-

rants reversal here (*see* majority op at 833 n 1). But, the majority provides no factual support for its assertion that deliberating jurors rarely ask to speak to the court in person without triggering the *O'Rama* procedure, and past cases indicate that robing room conversations with jurors, whether warranting reversal of a conviction or not, are not so rare as to obviate the need to limit genuinely unjustified reversals and thus discourage litigants from engaging in cynical tactical maneuvers (*see Collins*, 99 NY2d at 16; *Cain*, 76 NY2d at 121-122; *People v Pellington*, 294 AD2d 197, 197 [1st Dept 2002]; *People v Carr*, 168 AD2d 213, 213-215 [1st Dept 1990]; *see also People v Pagan*, 248 AD2d 325, 326 [1st Dept 1998]).

Finally, *People v Cain* and *People v Mehmedi* (*supra*), cited by the majority (*see* majority op at 831-832), are distinguishable from this case. In *Cain*, the trial court summoned a juror to the robing room in response to a poll of the jury upon its verdict (*see Cain*, 76 NY2d at 121-122). With counsel present and the defendant absent, the court: held an extensive conversation with the juror about the juror's confusion over the intricacies of accomplice liability; repeated its full initial instructions on that subject; provided an illustrative example of the issue; and discussed the juror's specific conclusions about the facts of the case (*see id.* at 122-123). The court then immediately accepted the jury's verdict without summarizing the robing room conversation for defendant or offering a readback of it (*see id.* at 123). On those facts, we held that the court's violation of the defendant's right to be present required reversal of his conviction (*see id.* at 124). By contrast, the court here did not hold a protracted dialogue with a juror about important and complex legal issues, adduce factual conclusions from the juror, or repeat substantial legal instructions and hypothetical examples in defendant's absence in a manner which deeply infringed on his right to be present.

As for *Mehmedi*, the trial court there also caused more than a de minimis violation of the defendant's right to be present. In that case, the court formulated an answer to a critical factual question posed by the jury in the defendant's absence (*see Mehmedi*, 69 NY2d at 760). While the defendant was still outside the courtroom, the court issued its response to the jury, and the court apparently did not later apprise the defendant of what had transpired (*see id.* at 760). On appeal, we accepted the People's concession that the court had committed a mode of

proceedings error without extended discussion, but we rejected their invitation to hold the error harmless and reversed the defendant's conviction (*see id.* at 760-761). Unlike the court in *Mehmedi*, the trial court in this case did not formulate its sole response to the full jury's critical factual inquiry in defendant's absence, nor did the court entirely deprive defendant himself of the opportunity to complain of the contents of its sole and final response to a jury inquiry, which here, in contrast to *Mehmedi*, were revealed to defendant in open court. Thus, *Mehmedi* does not require the invalidation of defendant's conviction.

In sum, by affirming the Appellate Division's order, the majority potentially fosters needless gamesmanship and detaches our precedent on the right to be present from its primary underpinnings. Therefore, I dissent and would reverse.

Chief Judge LIPPMAN and Judges PIGOTT and RIVERA concur with Judge GRAFFEO; Judge ABDUS-SALAAM dissents and votes to reverse in an opinion in which Judges READ and SMITH concur.

Order affirmed.