People v Kluge (2020 NY Slip Op 00878)





People v Kluge


2020 NY Slip Op 00878


Decided on February 5, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JOHN M. LEVENTHAL
JOSEPH J. MALTESE
LINDA CHRISTOPHER, JJ.


2011-11921
 (Ind. No. 1410-10)

[*1]The People of the State of New York, respondent,
v
John Kluge, appellant.


Thomas Theophilos, Buffalo, NY, for appellant.
Timothy D. Sini, District Attorney, Riverhead, NY (Grazia DiVincenzo and Glenn Green of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Suffolk County (Barbara Kahn, J.), rendered December 14, 2011, convicting him of rape in the first degree, criminal sexual act in the first degree, and burglary in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress DNA evidence.
ORDERED that the judgment is reversed, on the law, and a new trial is ordered.
In May 2010, the defendant was arrested and charged with, inter alia, burglary in the first degree, rape in the first degree, and criminal sexual act in the first degree. DNA testing matched his DNA to DNA collected from a complainant who was attacked and raped in her garage in October 2009. After a trial, the jury convicted the defendant of those charges.
The defendant failed to preserve for appellate review his contention that count 3 of the indictment was duplicitous, and we decline to review this contention in the exercise of our interest of justice jurisdiction (see People v Bonilla, 151 AD3d 735, 737; cf. People v Kaye, 137 AD3d 938, 940).
The defendant's contention that count 3 of the indictment is jurisdictionally defective is without merit. The defendant contends that while count 3 of the indictment charges him with violating Penal Law § 130.50(1), which proscribes, inter alia, engaging in "oral sexual conduct" with another person by forcible compulsion, the indictment alleged that the defendant engaged in oral sexual "contact" with the complainant, rather than oral sexual "conduct." However, the statutory definition of "sexual contact" (Penal Law § 130.00[3]) is broad enough to include "oral sexual conduct" (Penal Law § 130.00[2][a]; see People v Colsrud, 144 AD3d 1639, 1640). Thus, as the indictment charged acts that encompassed the act of oral sexual conduct, it cannot be said that the defendant lacked fair notice of the charges against him.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt of burglary in the first degree beyond a reasonable doubt. Contrary to the defendant's contention, [*2]the evidence was legally sufficient to prove that he caused "physical injury" to the complainant within the meaning of Penal Law § 10.00(9) (see People v Webster, 140 AD3d 1196, 1197). The evidence presented at trial established that the complainant experienced bruising on her inner and outer cheeks and her inner and outer lips, abrasions on her throat, and bleeding and bruising behind her left ear that caused the examining nurse to suspect a basilar skull fracture. The complainant described her ear drum as having been punctured and testified that it hurt for weeks. Additionally, the medications that the complainant was given to prevent pregnancy and sexually-transmitted diseases, some of which she took for two months, made her nauseated.
There is no merit to the defendant's contention that he was arrested on an unrelated assault charge without probable cause, and that the subsequently acquired evidence against him should therefore have been suppressed. A boyfriend of the defendant's sister had complained to the police that the defendant had assaulted him. The boyfriend was personally acquainted with the defendant, whom he identified to the police as the individual who assaulted him (see People v Anderson, 146 AD2d 638, 639). Therefore, when a police officer observed the defendant as a passenger in a vehicle that had been stopped for a traffic infraction, and the defendant confirmed his name to the officer, there was probable cause to arrest him (see id. at 639). Moreover, contrary to the defendant's contention, the vehicle in which he was a passenger was properly stopped by the police. "[A]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred, even if the underlying reason for the stop was to investigate another matter unrelated to the traffic violation" (People v Davis, 103 AD3d 810, 811 [internal quotation marks omitted]; see People v Sluszka, 15 AD3d 421, 423). Here, the record supports the hearing court's determination to credit a police officer's testimony that he observed the vehicle in which the defendant was a passenger run a stop sign, and that he radioed that information to a fellow officer (see People v Rosario, 78 NY2d 583, 588) who then stopped the vehicle (see People v Davis, 103 AD3d at 811).
We agree with the County Court's determination declining to suppress the DNA evidence obtained from a piece of gum that the defendant discarded while he was in custody on the assault charge. A defendant seeking suppression of evidence must establish standing by demonstrating a legitimate expectation of privacy in the place or item searched (see People v Ramirez-Portoreal, 88 NY2d 99, 108; People v McCullum, 159 AD3d 8, 12, affd 34 NY3d 1022). "This burden is satisfied if the [defendant] subjectively manifested an expectation of privacy with respect to the . . . item searched that society recognizes to be objectively reasonable under the circumstances" (People v Burton, 6 NY3d 584, 588; see People v Ramirez-Portoreal, 88 NY2d at 108; People v McCullum, 159 AD3d at 12). "Where a defendant abandons property, there is no search or seizure" (People v Hogya, 80 AD2d 621, 621; see People v Burkett, 98 AD3d 746, 748). However, "if the abandonment is coerced or precipitated by unlawful police activity, then the seized property may be suppressed because it constitutes fruit' of the poisonous tree" (People v Ramirez-Portoreal, 88 NY2d at 110). Moreover, "[t]he police may engage in a ruse with respect to a defendant as long as it is not coercive or so fundamentally unfair as to deny due process'" (People v LaGuerre, 29 AD3d 820, 822, quoting People v Amador, 11 AD3d 473, 474). Here, the defendant, who was in custody on the assault charge, had no reasonable expectation of privacy in the piece of chewed gum that he freely discarded into a trash can upon being told by a police officer that he had to get rid of it before being searched (see People v White, 153 AD3d 1369, 1370). The defendant was not forced or coerced into discarding the gum as there were other options he could have exercised in order to remove it before the search. Moreover, once the defendant "abandoned" the chewed gum by voluntarily discarding it into the trash can, there was no search or seizure (see People v Burkett, 98 AD3d at 748; People v Hogya, 80 AD2d at 621).
We also agree with the County Court's determination declining to suppress the DNA evidence derived from a buccal swab. The record demonstrates that the defendant voluntarily agreed to give a buccal sample (see People v Dail, 69 AD3d 873, 874). The testimony presented at the suppression hearing established that the defendant was only in custody for approximately 2½ hours when he consented to the buccal swab (see id. at 874). He was asked if he would consent and was not told that he would not be allowed to leave if he did not consent. The defendant read the consent form, which informed him of his right to refuse to provide a buccal sample, and signed it. The [*3]defendant remained cooperative throughout the time he was in custody. Considering the totality of the circumstances, the defendant's consent was voluntary and not coerced (see id.).
At the suppression hearing, the People established that the lineup identification procedures were not improper, and the defendant failed to establish that they were unduly suggestive (see People v Gregory, 160 AD3d 894, 895). While the defendant claims that a detective may have advised the complainant that the defendant's counsel would be present at the lineup, even if the complainant was so advised, the lineup identification would not have been tainted (see People v Brown, 17 NY3d 742, 744; People v Ashby, 289 AD2d 588, 588). Moreover, contrary to the defendant's contention, under the circumstances of this case, the facts that the complainant may have seen a photograph of the defendant that had been released to the media (see People v Hamilton, 186 AD2d 581, 582), and that the lineup procedure was conducted 14 months after the incident, did not render the procedure unduly suggestive. Further, the failure to employ a double-blind sequential procedure is not a basis for suppression of the lineup, as there is no mandate to use any specific procedure (see People v Johnson, 10 NY3d 875, 878; People v Thomas, 131 AD3d 551, 552; People v McLaughlin, 8 AD3d 146, 147).
The defendant's contention that he is entitled to reversal because the People's motions pursuant to former CPL 240.40(2)(b) for orders directing him to provide a buccal swab for DNA testing and to appear in a lineup failed to comply with the time limits set forth in former CPL 240.90(1) is unpreserved for appellate review and, in any event, without merit. Although the People failed to show good cause for their delay, the error does not implicate the defendant's constitutional rights (see People v Walters, 172 AD3d 916, 917; People v Cox, 161 AD3d 1100, 1101), nor does the record demonstrate that the defendant was prejudiced by the delay (see People v Roland, 167 AD3d 942, 943; People v Lewis, 44 AD3d 422, 422-423).
Contrary to the defendant's contention, the People demonstrated their entitlement to the orders issued pursuant to former CPL 240.40(2)(b) authorizing the taking of a buccal swab from him and directing him to appear in a lineup. The defendant had been indicted by a grand jury, reports establishing that the defendant's DNA matched the DNA recovered from the complainant during an examination conducted after the attack gave a clear indication that material evidence could be expected to result from collection of his DNA and from his participation in a lineup, and the orders were authorized by statute (see former CPL 240.40[2][b][i], [v]; People v Roshia, 28 NY3d 989, 990; People v Fields, 160 AD3d 1116, 1118; People v Brown, 70 AD3d 1302, affd 17 NY3d 742).
However, we agree with the defendant that the County Court should have granted his for-cause challenges to prospective jurors C.M. and D.A. on the ground that they each evinced "a state of mind that [was] likely to preclude [each of them] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20[1][b]).
"[A] prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the juror states unequivocally on the record that he or she can be fair and impartial" (People v Warrington, 28 NY3d 1116, 1119-1120 [internal quotation marks omitted]; see CPL 270.20[1][b]; People v Harris, 19 NY3d 679, 685; People v Johnson, 17 NY3d 752, 753). To satisfy the requirement for a clear assurance of impartiality, "a prospective juror must, first and foremost, in unequivocal terms, expressly state that his [or her] prior state of mind concerning either the case or either of the parties will not influence [the] verdict'" (People v Warrington, 28 NY3d at 1120, quoting People v Biondo, 41 NY2d 483, 485; see People v Arnold, 96 NY2d 358, 362; People v Johnson, 94 NY2d 600, 612).
Taken as a whole, the responses given by C.M. and D.A. "raise[d] a serious doubt regarding [their] ability to be impartial" (People v Warrington, 28 NY3d at 1119 [internal quotation marks omitted]; see CPL 270.20[1][b]; People v Harris, 19 NY3d at 685; People v Johnson, 17 NY3d at 753). Their subsequent responses fell far short of providing "unequivocal assurances of impartiality" (People v Warrington, 28 NY3d at 1120; see People v Gross, 172 AD3d 741, 743) or [*4]"demonstrat[ing] an absolute belief that [their] opinion[s] [would] not influence [their] verdict" (People v Reyes, 125 AD3d 892, 892 [internal quotation marks omitted]; see People v Garcia, 125 AD3d 882, 883; People v MacFarlane, 87 AD3d 700, 701).
In addition to improperly denying these for-cause challenges, the County Court erred in its management of concerns expressed by sworn jurors regarding their deliberations. At the commencement of the second day of deliberations, the court met with counsel and deliberating juror C.H., who had left the court a telephone message expressing concerns about deliberations. This conversation took place outside the defendant's presence. Although the court properly attempted to keep its communication with C.H. ministerial by simply directing her to put her concerns in writing, C.H. refused to accept the court's directions, expressing concerns about the course of deliberations, including a concern that someone was "stirring the jury" and that other jurors had been "influenced." The court eventually directed a court officer to return C.H. to the jury room and provide her with writing materials.
A defendant's right to be present "extends to all material stages of the trial, including ancillary proceedings in which defendants' presence could have a substantial effect on their ability to defend against the charges'" (People v Velasquez, 1 NY3d 44, 47, quoting People v Sloan, 79 NY2d 386, 392). The defendant's right to be present includes " the court's charge, admonishments and instructions to the jury'" (People v Burton, 138 AD3d 882, 883, quoting People v Rivera, 23 NY3d 827, 831). This right includes the defendant's right to be present during supplemental instructions to a lone juror unless the communication is purely ministerial (see People v Rivera, 23 NY3d at 832). Here, C.H.'s comments were in the nature of complaints that the jury was being pressured. C.H.'s concerns regarding the integrity of the deliberation process and the court's responses to them cannot be characterized as solely ministerial, despite the court's attempt to simply direct C.H. to put her concerns in writing rather than express them orally. Since the violation of a defendant's right to be present during the instruction of jurors is a mode of proceedings error, it need not be preserved for appellate review and presents an additional ground for reversal and a new trial (see id. at 831-832).
After the colloquy with C.H. and following an off-the-record discussion, the defendant was returned to the courtroom, and the court stated that it had received a note from the jury which had been marked as Court Exhibit X and "sealed with the consent of all parties." No further discussion of Court Exhibit X appears on the record.
"CPL 310.30 imposes two responsibilities on trial courts upon receipt of a substantive note from a deliberating jury: the court must provide counsel with meaningful notice of the content of the note, and the court must provide a meaningful response to the jury'" (People v Parker, 32 NY3d 49, 58-59, quoting People v Mack, 27 NY3d 534, 536; see People v Gedeon, 162 AD3d 1065; People v Cotton, 127 AD3d 778). The note at issue complained about jury deliberations. "[W]here the record does not establish that counsel was provided meaningful notice of the contents of a substantive jury note, the sole remedy is reversal and a new trial'" (People v Meyers, 33 NY3d 1018, 1020, quoting People v Parker, 32 NY3d at 62). Thus, counsel's awareness of a note does not discharge the court's duty; the record must also demonstrate that counsel had notice of the contents of the note (see People v Parker, 32 NY3d at 59). A reviewing court " cannot assume that the omission was remedied at an off-the-record conference' to which the transcript does not refer'" (id. at 60, quoting People v Walston, 23 NY3d 986, 990; see People v Silva, 24 NY3d 294, 300; People v Brown, 129 AD3d 854, 858).
"[A] trial court's failure to provide counsel with meaningful notice of a substantive jury note is a mode of proceedings error that requires reversal" (People v Morrison, 32 NY3d 951, 952; see People v Mack, 27 NY3d at 538; People v Nealon, 26 NY3d 152, 157; People v Silva, 24 NY3d at 299). "[A] trial court does not satisfy its responsibility to provide counsel with meaningful notice of a substantive jury inquiry by summarizing the substance of the note" and must instead read the note into the record " verbatim'" (People v Nealon, 26 NY3d at 156, 157, quoting People v Kisoon, 8 NY3d 129, 135; see People v Morrison, 32 NY3d at 960). Nevertheless, where the record demonstrates that counsel was given notice of the actual contents of the note, the court's failure to [*5]respond to the jury is not a mode of proceedings error and is subject to the preservation rule (see People v Clark, 28 NY3d 556, 566; People v Mack, 27 NY3d at 538, 544).
We cannot assume, from the County Court's statement that the parties agreed to seal the note, that counsel was made aware of the exact contents of the note since "an insufficient record cannot be overcome with speculation about what might have occurred. The presumption of regularity cannot salvage an O'Rama error of this nature" (People v Parker, 32 NY3d at 60 [internal quotation marks omitted]). Moreover, since the failure to disclose a jury note to counsel is a mode of proceedings error, it cannot be overlooked as harmless even where the evidence is otherwise overwhelming (see People v Mack, 27 NY3d at 540). Therefore, this error provides an additional basis upon which a new trial must be ordered.
Because the defendant must be retried, we need not reach the defendant's contention that his sentence was excessive.
The defendant's contentions that the People improperly obtained DNA evidence from an envelope is without merit, and his remaining contentions need not be reached.
DILLON, J.P., LEVENTHAL, MALTESE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court